Joyce M. **MADDAS**, Appellant

v.

Max C. **DEHAAS**, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 23, 2002.

Filed Jan. 17, 2003.

Paula M. Aigner, Hollidaysburg, for appellant.

Ilissa Zimmerman, Duncansville, for appellee.

Before: MUSMANNO, LALLY–GREEN, and KLEIN, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Joyce M. Maddas ("Mother"), appeals from the order dated April 2, 2002, determining the child support obligations of Appellee, Max C. Dehaas ("Father"). We affirm in part, reverse in part, and remand.

¶ 2 The record reveals the following facts. Mother and Father are both residents of Altoona, Pennsylvania. Mother and Father were never married, but a child, D.D., was born to them on June 26, 1989. Mother began seeking support from Father on July 12, 1989. On September 15, 1989, the parties agreed to Father's child support obligations in the amount of $650.00 per month. On January 2, 1990, Father sought and was granted a suspension of his support obligations as he had lost his job. Father subsequently obtained employment, and on June 13, 1990, the parties entered into another agreement regarding Father's child support obligations. Under the agreement, Father was to pay Mother $301.00 per month.

¶ 3 On November 14, 1990, Father sought a modification, decrease or suspension of his child support obligations. Fa-

ther had been in an automobile accident, which prevented him from working, and had not yet been ruled eligible for benefits relating to his injury. Due to Father's lack of income, his child support obligations were suspended; however, if Father became employed or received benefits, the prior agreement of June 13, 1990 would be reactivated in full force and effect.

¶ 4 On May 19, 1994, another order modifying Father's child support obligations was entered. The order attached Father's wages in the amount of $69.52 each week, or $278.08 each month. Mother filed a petition seeking an increase in Father's monthly child support obligations. The parties agreed to an increase, and on October 24, 1996, an order was entered reflecting their agreement. Under the order, Father's monthly support obligations were increased to $328.00. Also, Father was to pay for the child's medical expenses. This order was subject to review pending the outcome of Mother's application for Social Security benefits.

¶ 5 On July 9, 1999, Mother sought to increase Father's monthly child support obligations. On August 11, 1999, Father petitioned for a decrease in his monthly support obligations. The trial court entered an order on October 28, 1999 and, effective as of July 9, 1999, increasing Father's monthly support obligations to $456.00. The trial court also set Father's arrears for unpaid medical expenses at $734.15, $60.00 of which was to be paid along with each monthly support payment. The order also directed Father to provide the child with medical insurance and pay 72% of unreimbursed medical expenses in excess of $250.00. Mother's income was established to be $776.50, and she was assigned 28% of the unreimbursed medical expenses. Father appealed the October 28, 1999 order.

¶ 6 On December 3, 1999, the Domestic Relations Section of the Blair County Court of Common Pleas ("DRS") decided Father's appeal. The DRS affirmed the October 28, 1999 order finding that Father's income was $2,016.51 per month and Mother's income was $776.50 per month. The DRS noted that D.D. received social security disability benefits, due to Mother's disability, in the amount of $388.00 per month. The DRS did not include this payment in Mother's income. Father appealed this determination.

¶ 7 On February 18, 2000, the trial court ordered that another conference be held to determine Father's monthly support obligations. The trial court noted that at some date after October 24, 1996, Mother began receiving social security disability benefits for herself in the amount of $776.00 per month. The trial court determined that the October 28, 1999 order was entered without adjusting Father's support obligations for the time Mother failed to report her social security disability benefits. Therefore, the trial court remanded the matter so that Father's support obligations could be adjusted to account for Mother's unreported income.

¶ 8 Prior to the adjustment, Father filed a petition to decrease his monthly support obligations on July 14, 2000. Father indicated in his petition that he had lost his job. A new child support determination was made on August 18, 2000. The order established Mother's income to be $776.50 per month and Father's income to be $1,494.05 per month. The order set Father's monthly support obligations as $355.00 and Father's arrears as $275.17. Thus, along with his monthly support payments, Father was ordered to pay $25.00 per month in arrears, or $380.00 per month. The order also directed Father to pay 66% and Mother to pay 34% of D.D.'s unreimbursed medical expenses in excess

of $250.00. There was no mention of D.D.'s social security disability derivative benefits or of adjusting Father's payments to account for the time during which Mother failed to report her income.

¶ 9 On January 26, 2001, Father petitioned to have his monthly support obligations decreased. Father indicated in his petition that his unemployment benefits had been exhausted. The record does not indicate the outcome of Father's petition. However, two separate orders were entered, one dated February 15, 2001 and one dated May 17, 2001. Both orders directed the Department of Labor and Industry, Bureau of Unemployment Compensation Benefits and Allowances to remit 50.0% and 55.0%, respectively, of Father's unemployment compensation benefits to the domestic relations office.

¶ 10 On October 3, 2001, Mother sought review of the August 18, 2000 support order. Mother also sought contribution from Father for the child's orthodontic expenses and parochial school tuition. The DRS maintained Father's monthly support obligations at $355.00 and ordered him to pay the orthodontic expenses of the child. There was no mention of D.D.'s social security disability derivative benefits or of adjusting Father's payments to account for Mother's unreported income.

¶ 11 Father appealed the August 18, 2000 order on October 5, 2001. Also, on October 5, 2001, DRS filed a petition for contempt against Father. On October 29, 2001, the trial court reviewed the petition for contempt and Father's appeal. The trial court found Father to be in contempt of the support order but did not alter the August 18, 2000 order.

¶ 12 On December 21, 2001, Father petitioned to have his monthly support obligations decreased. Father indicated in his petition that he had obtained new employment and that the employment paid considerably less than his prior employment upon which his monthly support obligations were based. On January 23, 2002, the DRS determined Mother's monthly income to be $845.00 and determined Father's income to be $1,008.10. The DRS denied Mother's request that Father contribute to the cost of the child's parochial school tuition. The DRS determined Father's monthly support obligation to be $244.00 and that Father owed $4,611.53 in arrearages. Finally, the DRS determined that Father should be responsible for 54% of the child's unreimbursed medical expenses in excess of $250.00 and Mother should be responsible for 46%. There was no mention of D.D.'s social security disability derivative benefits or of adjusting Father's payments to account for Mother's unreported income.

¶ 13 On March 12, 2002, the DRS reviewed Father's petition to decrease his support obligation. The DRS determined that D.D.'s social security derivative benefits should have been included in determining Father's monthly support obligation in the January 23, 2002 order. After calculating the net monthly income and including D.D.'s disability benefits in accordance with Pa.R.C.P.1910.16–2(b), Father's monthly support obligation was set at $64.00. The March 12th order did not alter the prior determination that required Father to contribute to D.D.'s orthodontic expenses but not to contribute to her parochial school tuition.

¶ 14 Shortly after this determination, the trial court reviewed the order.[1] The trial

---

1.  Although the trial court stated that the case was before it on a petition for contempt, the record does not reflect that a petition for contempt was filed for the trial court's consideration. The last petition for contempt was filed on October 5, 2001 and determined by

court issued an order on April 2, 2002. In this order, the trial court affirmed the DRS, which had included D.D.'s social security disability benefits in calculating Father's support obligation. Also, the trial court noted that the remand previously ordered to take into account the fact that Mother failed to report the social security benefits she received from October 24, 1996 to October 28, 1999 did not occur.[2] Therefore, the trial court again remanded the case so that a recalculation may occur to account for the social security disability payments received by both Mother and D.D. as of October 24, 1996 until the time prior to the effective date of the April 2, 2002 order. The trial court also ordered Father to contribute to D.D.'s orthodontic expenses and parochial school tuition. Thus, Father's new child support obligation was $187.00 per month plus $25.00 per month for arrears if there were any after the recalculation.

¶ 15 Mother timely filed an appeal from the April 2, 2002 order. Mother raises two issues for our review.

  I.    Whether the [trial] court erred in retroactively modifying the child support order to 1996?

  II.   Whether the Pa.R.C.P. [1910.16–2(b) ] is fair relating to the treatment of Social Security Disability payments on behalf of a child?

Appellant's Brief at 5.

■ ¶ 16 Our standard of review of a trial court's order establishing child support is well settled:

A trial court's determination regarding a child support award will not be disturbed absent an abuse of discretion. An abuse of discretion occurs if insufficient evidence exists to sustain a support award, if the trial court overrides or misapplies existing law, or if the judgment exercised by the trial court is manifestly unreasonable.

*Fitzgerald v. Kempf,* 805 A.2d 529, 531 (Pa.Super.2002).

¶ 17 We examine Mother's second issue first. Mother argues, without citation to any authority, that Pa.R.C.P.1910.16–2(b)(2) is unfair. Mother does not present this Court with a developed argument challenging the constitutionality of Pa. R.C.P.1910.16–2(b)(2); rather, Mother argues that the rule is unfair because it treats the children of disabled parents differently than those children whose parents are not disabled.

¶ 18 The General Assembly granted our Supreme Court general supervisory and administrative authority over the unified judicial system and also granted the Court certain enumerated powers to effect this authority. 42 Pa.C.S.A. § 1701. One of the Court's powers is the power to prescribe and modify general rules governing the practice, procedure and conduct of all courts. 42 Pa.C.S.A. § 1722(a). Thus, the Rules of Civil Procedure promulgated by the Supreme Court have the force of a statute. *Dombrowski v. City of Philadelphia,* 431 Pa. 199, 245 A.2d 238, 241 n. 4

---

the trial court on October 29, 2001. Also, during the argument before the trial court, the parties argued the merits of the January 23, 2002 order. *See,* N.T., 3/20/02. The argument did not relate to a petition for contempt against Father. Further, the instant order does not make any findings regarding contempt. Thus, it appears that the trial court misstated the nature of the petition leading to the instant order.

**2.** Although the trial court's order indicates that the period of time to be considered on remand was October 24, 1996 to October 28, 1998, the correct dates from the February 18, 2000 order are October 24, 1996 and October 28, 1999. The docket does not contain any entries for 1998 and Mother's disability payments were first included in the order dated October 28, 1999.

(1968). Therefore, the Rules of Civil Procedure bind the courts of the unified judicial system and those who practice and appear before it. Since Pa.R.C.P.1910.16–2(b)(2) is a rule promulgated by the Supreme Court under the authority granted to it by the General Assembly, the rule is binding on this Court, the trial court and the parties to this appeal. Accordingly, as did the trial court below, we must apply this rule to the instant case.

¶ 19 Pa.R.C.P.1910.16–2(b)(2) is a new rule, adopted on October 27, 2000. Unfortunately, there is no Official Comment explaining the rationale behind the adoption of the rule, and there is no case law from this Commonwealth interpreting the rule. Our research into the law of other jurisdictions did not produce any helpful authority. While there are cases from other jurisdictions that discuss how to treat the social security disability benefits paid directly to a child, these cases do not seem to rely upon a rule as we have here. Thus, we have found no authority, either of this Commonwealth or of another jurisdiction, which applies a rule exactly like Pa.R.C.P. 1910.16–2(b)(2).

¶ 20 Since we must apply Pa.R.C.P. 1910.16–2(b)(2), and since we are without a developed challenge to the constitutionality of Pa.R.C.P.1910.16–2(b)(2) to which we may respond or any instructive authority to guide our application of the rule, our duty requires that we simply review whether the trial court properly applied Pa.R.C.P.1910.16–2(b)(2) as written. Thus, we now review Mother's first issue.

■ ¶ 21 Mother claims that the trial court erred when it applied Pa.R.C.P. 1910.16–2(b)(2) retroactively. Specifically, Mother argues that there was no compelling reason for the trial court to order a retroactive application of Pa.R.C.P. 1910.16–2(b)(2).

¶ 22 A trial court may order the retroactive modification of arrears, pursuant to 23 Pa.C.S.A. § 4352(e). This section provides, in pertinent part:

**(e) Retroactive modification of arrears.**—No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. If a petition for modification was filed, modification may be applied to the period beginning on the date that notice of such petition was given, either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor. However, modification may be applied to an earlier period if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition. . . . .

23 Pa.C.S.A. § 4352(e). This section applies only to modification of arrears and does not permit retroactive modification of the general support obligation. *Holcomb v. Holcomb*, 448 Pa.Super. 154, 670 A.2d 1155, 1157–1158 (1996). Therefore, under this section, the trial court could order a retroactive modification of Father's arrears dating back to the time Mother first misrepresented her income if Father promptly filed a petition for modification upon discovery of Mother's misrepresentation.

¶ 23 The trial court found that Mother misrepresented her income by failing to report her receipt of social security disability payments. Trial Court Order, 4/2/02, at 1. Therefore, the trial court remanded the case so that Father's arrears could be modified from the time of Mother's misrepresentation to the effective date of the instant order. *Id.*

¶ 24 Our review of the record reflects the following. The last support order entered prior to Mother's receipt of social security disability benefits was entered on October 24, 1996. The record does not reflect the date upon which Mother began receiving social security disability benefits.[3] The record does not reflect when Mother's misrepresentation was discovered. However, on August 11, 1999, Father, acting *pro se*, sought a decrease in his monthly support obligations. On October 28, 1999, DRS included Mother's disability benefits in its calculation of Father's support obligation. We note that Mother does not allege that Father failed to promptly file a petition to modify his arrears upon discovering Mother's misrepresentation. Therefore, it appears that Father promptly filed a petition to modify his support obligations. Thus, 23 Pa.C.S.A. § 4352(e) is applicable.

¶ 25 The record further reflects that the February 18, 2000 order requiring a recalculation based on Mother's new income was not carried out. On October 3, 2001, the DRS conducted another support conference, at which time the officer found Mother's income to be $767.00. Neither this order, nor any subsequent order, modified Father's arrears to account for the time during which Mother failed to report her income. Therefore, Father never received credit as the trial court ordered. Thus, the instant trial court order, directing a recalculation for this period of time pursuant to 23 Pa.C.S.A. § 4352(e), is proper. Accordingly, we affirm the trial court's order directing a modification of Father's arrears from the date Mother's disability payments commenced to October 29, 1999.

¶ 26 The trial court also ordered that the social security disability payments paid directly to D.D. should be considered when retroactively modifying Father's arrears from October 24, 1996, until the effective date of the instant order. Mother argues that this is error as the child did not receive her derivative benefits in October 24, 1996, and also because the trial court cannot apply Pa.R.C.P.1910.16–2(b)(2) prior to the rule's effective date of October 27, 2000.

¶ 27 Our review of the record does not reflect the date D.D.'s derivative benefits commenced. Thus, we cannot address Mother's assertion that the trial court erred by ordering the inclusion of benefits which were not yet received. Nevertheless, we may address whether the trial court properly ordered the child's disability payments to be included in the modification of Father's arrears from the time Mother's disability payments commenced until the effective date of the instant order.

¶ 28 On October 27, 2000, the Supreme Court revised Pa.R.C.P.1910.16–2(b) to include paragraph (2), which states:

> (2) If a child for whom support is sought is receiving social security retirement or

---

3. We note that Mother has included in her reproduced record letters from the Social Security Administration indicating that Mother began receiving Supplemental Security Income ("SSI") benefits on November 28, 1997, which indicated that Mother was disabled in September, 1996. However, this letter is not in the certified record, and, therefore, we may not consider it as evidence as to when Mother's social security disability payments commenced. *Rosselli v. Rosselli*, 750 A.2d 355, 359 (Pa.Super.2000) (this Court may review and consider only items which have been duly certified in the record on appeal). Also, SSI benefits are distinct from disability benefits. SSI benefits are specifically excluded from a parent's income. Pa.R.C.P. 1910.16–2(b)(1). Social Security disability benefits, however, are specifically included when calculating a parent's income. Pa.R.C.P. 1910.16–2(a)(6). Therefore, even if we could consider the letter Mother has included in the reproduced record, the letter does not provide evidence relevant to the question before us.

disability derivative benefits as a result of a parent's age or disability, the benefits the child receives shall be added to the combined monthly net incomes of the obligor and the obligee to calculate the income available for support on the vertical axis of the basic child support schedule as set forth in Rule 1910.16–3. The presumptive amount of support as set forth on the schedule at the combined income of obligee, obligor and child's benefits shall then be reduced by the amount of the child's social security or disability derivative benefits before apportioning the remaining support obligation between the parties pursuant to Rule 1910.16–4.

Pa.R.C.P.1910.16–2(b)(2). This rule was effective as of October 27, 2000. Supreme Court Order, 10/27/00, No. 337, Docket No. 5.

¶ 29 Generally, a rule or an amendment to a rule is effective upon the date specified by the Supreme Court. Pa.R.C.P. 52(a). Also, a rule or amendment is to apply to actions pending on the effective date. Pa.R.C.P. 52(c). Additionally, there is a presumption against a retroactive effect to a statute. 1 Pa.C.S.A. § 1926. As a rule promulgated by the Supreme Court has the same effect as a statute, the presumption against a retroactive effect is equally applicable to a rule of civil procedure. Here, Pa.R.C.P.1910.16–2(b)(2) became effective on October 27, 2000. Therefore, the rule can only be applied as of its October 27, 2000 effective date.

¶ 30 The trial court ordered that D.D.'s social security disability payments be considered when modifying Father's arrears from the date Mother began receiving disability benefits until the effective date of its order. The court's order, therefore, applied Pa.R.C.P.1910.16–2(b)(2) to a period prior to its effective date. Such an application constitutes a retroactive appli-

cation of Rule 1910.16–2(b)(2). Since there is a presumption against applying rules retroactively, and since the Supreme Court has not expressly stated that the rule may be applied retroactively, the trial court erred by ordering that D.D.'s payments be included in the modification of Father's arrears from the date Mother began receiving social security disability until October 26, 2000.

¶ 31 On the other hand, the rule may be applied as of its effective date. The trial court order required D.D.'s social security disability payments to be considered in a modification of Father's arrears up until the effective date of the order. Therefore, when modifying Father's arrears, the child's disability payments may be considered pursuant to Pa.R.C.P.1910.16–2(b)(2) as of October 27, 2000, until the effective date of the trial court order.

¶ 32 Accordingly, Father's arrears should be modified to include Mother's income from the date she began receiving social security disability benefits until October 28, 1999. Also, Father's arrears should be modified to include the disability payments paid directly to D.D. as of October 27, 2000, or the date she began receiving them, whichever is later, until the effective date of the trial court order. In making this modification, the finder of fact should establish for the record the date Mother began receiving social security disability benefits, the date D.D. began receiving social security disability derivative benefits, and the date and nature of the petition upon which the instant trial court order is based.

¶ 33 Order affirmed in part, reversed in part. Remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.