J-A06018-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.O. A/K/A C.G. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| N.G. | |
| Appellant | No. 808 MDA 2015 |

Appeal from the Order Entered April 8, 2015
In the Court of Common Pleas of Dauphin County
Domestic Relations at No(s): 824 DR 2011

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                **FILED APRIL 26, 2016**

N.G. (Father) appeals *pro se* from the order, entered in the Court of Common Pleas of Dauphin County, dismissing his petition for modification of child support which sought a reduction in his support obligation due to his chronic medical condition which makes him unable to work full-time.  After careful review, we affirm based on the opinion authored by the Honorable Jeannine Turgeon.

The parties were married in 2007 and separated in 2011; one child was born of the marriage (born 9/10).  C.O. (Mother) filed a complaint seeking child support in May 2011.  Mother maintained primary physical custody of Child.  On July 11, 2011, the court entered an order requiring Father to pay $780/month in child support, plus $2,086.18 in arrears.  The court's order was based on a determination that Father's monthly net

income was $2,248.35. On January 13, 2012, the court entered an order decreasing Father's support payment to $670.80/month, plus $64/month in arrears. Finally, on May 21, 2013, the court further decreased Father's support payments to $642.82/month, plus $64.28 in arrears/month, effective April 24, 2013.

On August 15, 2014, Father filed a petition to modify his support obligation, claiming that he is unemployed and unable to work full time due to a medical condition, Thalassemia Major,[1] that makes him transfusion dependent. A conference on the petition was held on October 20, 2014, after which an officer denied Father's petition, and determined that Father's earning capacity is $50,000/year.

On November 5, 2014, Father filed a *de novo* appeal from the conference officer's determination. On April 8, 2015, the trial court held a hearing, after which it dismissed Father's appeal, noting that based on the evidence of record the court found him to be "certainly capable of working from home . . . to earn money" and that he could "do tax returns from home while [he is] getting transfusions." *Id.* at 19. The court also noted that

_____

[1] Thalassemia is an inherited blood disorder in which the body makes an abnormal form of hemoglobin, the protein in red blood cells that carries oxygen. The disorder results in large numbers of red blood cells being destroyed, which leads to anemia. *See* https://www.nlm.nih.gov/medlineplus/ency/article/000587.htm (last visited March 28, 2016). Father testified that both of his parents carry the Thalassemia trait which gave him a 25% chance of being born with the disease. N.T. Appeal *De Novo*, 4/8/15, at 8.

when, and if, Father becomes unable to work, he can file for social security disability benefits which would go towards his support obligation. ***Id.***

Father filed the instant *pro se* appeal which raises the following issues for our consideration:

(1)     Did the trial court correctly deny the appeal even after hearing credible testimony from the Appellant and viewing Exhibits presented by Appellant's counsel including but not limited to the duly completed and signed Physician Verification Form?

(2)     Did the trial court judge correctly hold Appellant to a full time earning capacity of $50,000 ignoring the assertion by Appellant's Hematologist on the Physician Verification Form that Appellant is unable to work and that it was undetermined when his health condition would allow him to return to work?

(3)     Did the trial judge correctly hold Appellant to a full time earning capacity of $50,000 ignoring Appellant's credible testimony that he was unable to work full time?

(4)     Did the trial judge correctly hold Appellant to a full time earning capacity of $50,000 ignoring credible testimony that the Defendant was currently unemployed, was not receiving unemployment compensation and yet was being assessed child support based on unemployment compensation that he last received in 2012?

(5)     Was the trial judge correct in ignoring credible testimony that Appellant was sustaining himself with the help of programs such as Supplemental Nutrition Assistance, LIHEAP and Medical Assistance, on a monthly pension of $189 per month and by parents, family and friend, and yet he was [sic] being assessed child support based on a national net monthly income of $2,200 (approximate) derived from unemployment compensation he last received in the year 2012?

(6)     Was the trial court correct in assessing child support on the Appellant given that child support laws and regulations were created to ensure that the custodial parent does not

become a ward of the state yet in this case the custodial parent (obligee) who earns an income of $60,000 per year is awarded child support of $7,713.84 per year from a non-custodial parent (obligor) whose only income is $2,268 per year from a pension and who is dependent on federal and state benefits to sustain himself?

(7) Did the trial court correctly ignore credible testimony from Defendant and Plaintiff exhibits identified 12, 13, and 14 which show that he was looking for ways to generate whatever income he could given his medical condition and instead assessed him a full-time earning capacity of $50,000?

(8) Was the trial court correct in not reducing Appellant's child support burden based on his actual earnings until he applied for and was approved for Social Security Disability?

(9) Was the trial court judge correct in ignoring the trier of fact [sic] compiled by the conference officer and presented at the hearing by Kim Robinson, Director of the Domestic Relations Office?

The amount of a child support order is largely within the discretion of the trial court, whose judgment should not be disturbed on appeal absent a clear abuse of discretion. *Isralsky v. Isralsky*, 824 A.2d 1178, 1187 (Pa. Super. 2003) (citation omitted). An abuse of discretion is not merely an error of judgment, but rather a misapplication of the law or an unreasonable exercise of judgment. *Id.* A finding that the trial court abused its discretion must rest upon a showing by clear and convincing evidence, and the trial court will be upheld on any valid ground. *Id.*

While Father's brief lists nine separate issues, the essence of his claims boils down to the single contention that the court improperly attributed him a $50,000 earning capacity and failed to reduce his support obligation where his medical condition prevents him from working full-time.

A person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. *Baehr v. Baehr*, 889 A.2d 1240 (Pa. Super. 2005). Earning capacity is the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, earnings history, and child care responsibilities. *Woskob v. Woskob*, 843 A.2d 1247 (Pa. Super. 2004). *See* Pa.R.C.P. 1910.16-2(d)(4).

"A provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." 23 Pa.C.S. § 3105(b). When a party petitions to modify support, due to a substantial change in circumstances, a court may modify the amount, as follows:

> (c) Pursuant to a petition for modification, the trier of fact may modify or terminate the existing support order in any appropriate manner based upon the evidence presented without regard to which party filed the petition for modification. If the trier of fact *finds that there has been a material and substantial change in circumstances, the order may be increased or decreased depending upon the respective incomes of the parties, consistent with the support guidelines and existing law, and each party's custodial time with the child at the time the modification petition is heard.*

Pa.R.C.P. 1910.19(c) (emphasis added). Father's claim that a downward deviation of his support obligation and earning capacity is appropriate and necessary is based on the following provision:

> *Involuntary Reduction of, and Fluctuations in, Income*. No adjustments in support payments will be made for normal fluctuations in earnings. However, appropriate adjustments will

- 5 -

be made for *substantial continuing involuntary decreases in income*, *including but not limited to the result of illness*, lay-off, termination, job elimination *or some other employment situation over which the party has no control* unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation.

Pa.R.C.P. 1910.16-2(d)(2) (emphasis added). It is the obligor's burden to prove that any income reduction was involuntary. ***Grimes v. Grimes***, 596 A.2d 240, 242 (Pa. Super. 1991).

Father has a master's degree in business administration and is a licensed, certified public accountant. From August 2003 to 2009, Father earned approximately $52,000 to $54,000/year. At the time of the *de novo* appeal in April 2015, Father testified that he had been unemployed for the past eight months. Father receives medical benefits through the Department of Public Welfare, receives food stamps and carries secondary insurance. At the hearing, Father presented a November 2014 physician's verification form, ***see*** Pa.R.C.P. 1910.29(b)(2), stating that he is unable to work due to his medical condition and that the doctor could not determine when he could return to work. N.T. Appeal *De Novo*, 4/8/15, at 7. At the hearing, Mother's attorney produced evidence that Father's LinkedIn account showed Father has been the owner of an accounting business from May 2011 to present, that he is also employed as a real estate agent with Keller Williams, and that he advertises his services as a private credit counselor on Facebook. ***Id.*** at 12-14. Mother's counsel also pointed out that according to records in the parties' pending custody action, Father's Twitter account

indicates that he extensively traveled to India (12/2014 to 2/2015; 10/2013 to 3/2014; and 12/2012 to 2/2013).

Instantly, the trial court concluded that Father is capable of working from home and earning a full-time wage over the course of a seven-day work week. Under such conditions, the court reasoned that Father would be able to rest and accommodate his need for scheduled medical treatments, required as a result of his blood condition. In coming to its decision, the court also took into account Father's own testimony at the 2014 custody hearing that his health was improving, as well as Mother's testimony that Father had extensively traveled internationally from December 2014 to March 2015, again from October 2013 to March 2014, and finally again from December 2012 to February 2013, without medical complications. ***See***

***Mackay v. Mackay***, 984 A.2d 529, 533 (Pa. Super. 2009) ("[w]hen the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part of none of the evidence presented.").

While Father produced a form from his physician attesting to his medical condition and inability to work, the court found that information stale, inadmissible under the rules of procedure,[2] and contradicted based on

---

[2] We note that under Rule 1910.29(b)(2), Father was required to serve the physician verification form on Mother not later than 20 days after the
*(Footnote Continued Next Page)*

the other evidence of record. Accordingly, the court concluded that Father did not prove that his medical condition resulted in a substantial continuing involuntary decrease in his income. **See** Pa.R.C.P. 1910.16-2(d)(2). Our review of the hearing transcript supports the trial court's factual findings and legal conclusions; therefore, the court properly denied his petition. **Grimes**, **supra**.

We rely upon Judge Turgeon's opinion to affirm the court's underlying order. We advise the parties to attach a copy of that decision in the event of further proceedings in the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2016

_(Footnote Continued)_ ─────────

conference with the conference officer. This, in turn, would have given Mother the opportunity to file and serve an objection to the introduction of the form within 10 days. Instantly, Father did not comply with the service requirements under the rule, thus preventing Mother from objecting to or rebutting his medical testimony. For this reason, the trial court did not permit the form to be formally admitted into evidence at the hearing.

ORIGINAL

Copies Distributed 7-9-15
MER

C████O██████ a/k/a
C██████NA G████████Y,

      Obligee

v.

N████ G█████████,

      Obligor

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY PENNSYLVANIA
:
:
:
: No. 0824 DR 2011, PACSES 1371124█
:
:
: SUPPORT APPEAL

2015 JUL 9 AM 8 33
DAUPHIN COUNTY DOMESTIC RELATION

## MEMORANDUM OPINION

Before the court is the appeal filed by N███ G██████ from an order directing him to pay child support. This opinion is written in support of the order, pursuant to Pa.R.A.P. 1925(a).

## Background

The parties, mother C████████ and father N██████G████████, were married in 2007 and separated in 2011. Following their separation, mother maintained primary physical custody of the parties' daughter, currently four years old (DOB 9/10). Mother filed a complaint seeking child support under this docket in 2011 ultimately resulting in an order requiring father pay child support of $665 per month plus $66 per month on arrears.[1] The order was decreased to $642 per month plus $64 per month on arrears, effective April 24, 2013. On August 15, 2014, father filed a petition to decrease his support obligation claiming he had no source of income and was unable to pay any support. (N.T. 3-4) Following an office conference, I issued an order denying his petition October 20, 2014, upon the conference officer's recommendation. Father filed a timely request for de novo review which hearing was eventually held April 8, 2015, due to requests for continuances by the parties.

In determining father's child support obligation, the conference officer assigned him a gross yearly earning capacity of $50,000. (N.T. 5) This earning capacity was assigned based

---

[1] Father also initiated his own action at the time seeking spousal support. I denied father's request following a hearing December 1, 2011. N. G██████ v. C. G██████, 850 DR 2011 (Mem. Opn. March 1, 2012). Father appealed my ruling on that issue and on child support. The Superior Court quashed father's child support appeal as interlocutory because I had directed the case be remanded to collect income and day care cost information from mother. C. G██████ v. N. G██████, 6 MDA 2012 (Feb. 24, 2012). Father later filed to discontinue his spousal support appeal. N. G██████ v. C. G██████, 4 MDA 2012 (June 5, 2012).

DATE FI ⋅ 7-9-15
ENTERED BY MER

1/76

upon father's educational background and earnings history. Father, currently 41 years of age, has a Master's Degree in Business Administration and has been licensed as a CPA. (N.T. 5, 9) He was employed between 2003 and 2009 as an auditor manager with the Commonwealth earning approximately $52,000 to $54,000. (N.T. 6) This court also takes judicial notice from the 2011 hearing in this matter, that as recently as 2011, father had been employed by the Navy where he had been making more than $80,000 per year. N. Goldney v. C. Goldney, 850 DR 2011 (Mem. Opn. March 1, 2012). He was later laid off from that job and was unemployed much of 2013 during which he collected unemployment compensation. That source of income has since been exhausted. (N.T. 4-5) Father was last employed with Algomod Technologies between May and August 2014. (N.T. 5)

Father testified at the hearing that he should be assigned a reduced earning capacity because he suffers from Thalassemia Major and is unable to work full time. (N.T. 7, 18) His condition causes anemia and requires blood transfusions every two to three weeks. The transfusions have resulted in an iron overload which has resulted in Type 2 Diabetes and Hepatitis C. (N.T. 8) He claimed his condition renders him weak and unable to work. (N.T. 9) He submitted a physician's verification from November 2014 in which his physician indicated that father is unable to work and that it was "undetermined" when he could return to work.[2] (N.T. 7) He has been placed on a list to receive a bone marrow transplant but has been told there is little chance for a match due to his Indian ancestry. (N.T. 9-10) As of the de novo hearing, father had not applied for Social Security disability benefits. (N.T. 10)

Mother presented evidence that at the parties' custody hearing before the Hon. Scott Evans on September 24, 2014, father sought shared physical custody of the parties' daughter, representing to the court that he was in "better physical health now." (N.T. 12-13) (citing N. Goldney v. C. Goldney, No. 2011 CV 4775 CU (at N.T. 162-63)) Father testified at the current hearing that he was able to take care of his young daughter but that he could not work the long hours expected of auditors. (N.T. 11)

Mother also presented evidence of father's work history as reflected on a number of media sites used by father as of April 7, 2015. (Exbts. P-1 - P-4)) In an entry posted on his

---

[2] The Physician Verification Form was presented at the hearing but not admitted into evidence.

LinkedIn account, father includes a detailed work history since July 1994. (N.T. 12-13) His most recent work listing includes an entry that he has been the owner of "N████ S. G██████, CPA" since May 2011. (N.T. 12; Exbt. P-1) He summarizes his experience as "[f]ourteen years of finance, accounting and audit experience. Eleven years of experience leading audit engagements and managing accounting function." (Exbt. P-1) Father also actively advertised and identified himself on his Facebook page as offering private credit counseling and other financial services. (N.T. 14; Exbt. P-4) In addition, father was listed as an agent on the website of the KellerWilliams, a global real estate firm. (N.T. 13; Exbt. P-2) Father also identified himself on his Twitter account as a realtor dealing global properties and offering advice on tax free sales. (N.T. 13-14; Exbt. P-3)

Mother also presented evidence that father has the resources to travel extensively, noting he was in India from December 31, 2014 until March 9, 2015, from October 1, 2013 until March 2014 and from December 1, 2012 until sometime in February 2013. (N.T. 15, 17) Father additionally planned to travel with the parties' child to Florida within a month following the de novo hearing in this matter. (N.T. 15)

Father's response to his social media postings were that they accurately reflected his attempts to find employment. (N.T. 16) He further indicated that he had not made any income from his real estate brokerage position. (N.T. 16)

At the conclusion of the hearing, I held that father was capable of working from home and earning a full time wage over the course of a seven-day work week, which he would need to accommodate whatever limitations he claimed and his need for transfusions. (N.T. 19) I additionally noted that the extent of father's health claims were questionable given his recent statement in the custody action that his health was improving and given the evidence of his extensive traveling, reflective of improved health and financial resources. (N.T. 19) I later issued an order denying father's de novo appeal and directing that the order remain at $642 per month plus $64 per month on arrears, which order was based upon father being assigned a $50,000 earning capacity. Father filed an appeal to that ruling, currently pending.

3

## Legal Discussion

Father has filed a lengthy statement of errors raised on appeal, which this court necessarily distills to the following issue: the court erred by ignoring credible evidence that father is not capable of a full-time earning capacity due to his medical condition. Father specifically complains that the court ignored evidence he presented from his physician concerning his inability to work, that he is currently unemployed and has been actively seeking part-time employment.[3] Father suggests that he is only capable of working twenty (20) hours per week making $15 per hour, or a yearly gross earning capacity of approximately $14,400.

Generally, parents have an absolute obligation to support their children and this obligation "must be discharged by the parents even if it causes them some hardship." Mencer v. Ruch, 928 A.2d 294, 297 (Pa. Super. 2007) (citations and internal quotation marks omitted). "[I]n Pennsylvania, a person's income must include his earning capacity, and a voluntary reduction in earned income will not be countenanced[.]" Id. "Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity[,]" not equal to his or her actual earnings. Ney v. Ney, 917 A.2d 863, 866 (Pa. Super. 2007) (citation omitted).

The applicable Support Guidelines addressing earning capacity are as follows:

Rule 1910.16-2. Support Guidelines. Calculation of Net Income.

(d) Reduced or Fluctuating Income.

\*     \*     \*

(4) *Earning Capacity*. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working

---

[3] Father also raised in his statement of errors issues concerning child care costs and mother's income. However, none of these issues were raised at the de novo hearing are thus waived. See E.D. v. M.P., 33 A.3d 73, 80 (Pa. Super. 2011) (citing Pa.R.A.P. 302).

4

hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).[4]

"[A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." Baehr v. Baehr, 889 A.2d 1240, 1244-45 (Pa. Super. 2005) (citing Woskob v. Woskob, 843 A.2d 1247, 1251 (Pa. Super. 2004) (citations omitted)). "[A] person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." Haselrig v. Haselrig, 840 A.2d 338, 340 (Pa. Super. 2003) (quoting Strawn v. Strawn, 664 A.2d 129, 132 (Pa. Super. 1995)).

In deciding upon father's earning capacity, this court takes into consideration the totality of his circumstances, including his age (41), health, work experience, earnings history and child care responsibilities. Pa.R.C.P. 1910.16-2(d)(4). With regard to father's health, he claims this court erred by ignoring credible evidence presented from his physician. With regard to the physician's verification form, it asserted that father was unable to work. Father himself represented to the court that he is at least capable of part-time employment. (N.T. 18) Furthermore, the form was submitted in November 2014, five months prior to the de novo hearing. This evidence was thus of limited value. Additional evidence revealed that father recently claimed in the custody action that his health was improving and that he has not been limited by his condition from either the expense or exertion of extensive traveling.

The evidence presented otherwise revealed father has a significant educational background, including an MBA degree and is licensed as a CPA. He earned an average gross annual income of around $50,000 during the 2000's, which increased to $80,000 as recently as 2011. This earnings history reflects that father is capable of working from home and earning a full-time wage over the course of a seven-day work week, taking rest breaks as needed to

---

[4] The Rules of Civil Procedure promulgated by the Supreme Court, have the force of statute. Maddas v. Dehaas, 816 A.2d 234, 238 (Pa. Super. 2003), appeal denied, 827 A.2d 1202 (Pa. 2003).

accommodate his medical condition. Finally, father presented no evidence that child care responsibilities hinder his ability to work.

Accordingly, I denied father's request to reduce his child support obligation.

_____July 8, 2015_____  
Date

_____  
Jeannine Turgeon, Judge

Distribution:

Nikhil Goklaney – 230 Saddle Ridge Drive, Harrisburg Pa. 17110

Nichole M. Walters, Esq. – YWCA Legal Center, 112 Market St Fl. 4, Harrisburg, PA 17101-2024