J. S10017/17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEISHA HAMILTON | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| ANDRE E. HAMILTON, | : | |
| Appellant | : | No. 1443 EDA 2016 |

Appeal from the Order Entered May 9, 2016
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 14-12664
PACSES# 219115003

BEFORE: BENDER, P.J.E., DUBOW, J., and SOLANO, J.

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 09, 2017**

Appellant, Andre E. Hamilton ("Father"), appeals from the May 9, 2016 Order, which denied the parties' Exceptions and ordered Appellant to pay $1,074 per month in child support to Appellee, Keisha Hamilton ("Mother"). Upon careful review, we vacate and remand for further proceedings.

We glean the following facts from our review of the certified record.[1] Father and Mother were married on August 28, 2013, and separated on September 30, 2014, after being involved in a romantic relationship for approximately five years. They have one minor child.

---

[1] The certified record does not contain a transcript of the December 29, 2015 hearing before the Support Master or copies of exhibits submitted to the Support Master on that date. Therefore, we rely on the factual findings stated in the Report of Master in Support, hearing date 12/28/15, at 3-8 and Trial Court Opinion, filed 7/19/16, at 3-5.

Mother is a licensed practical nurse who graduated from high school and completed one year of college. Mother stopped working in 2010 after Father told her he would support her, and after the birth of their child, Mother remained at home to care for their child. In 2015, Mother submitted twenty applications for employment, but received no offers.

Father graduated from high school and completed three years of college. Father admitted to dealing drugs for several years, until 2012 when he was acquitted of attempted murder, but convicted of possession of a firearm. Father served approximately one year in prison.

Father currently owns On the Rise Productions, LLC, a business that owns real estate that generates monthly rental income of $980. Father's 2013 and 2014 Schedule C tax forms for On the Rise Productions, LLC, reflect income of $10,158 and $6,634, respectively. Father owns a second business, Rich and Poor Rental, LLC, which rents out used vehicles. Father's 2014 Schedule C Tax form for Rich and Poor Rental, LLC, reflects an income of $5,760.[2]

On November 20, 2014, Mother filed a Complaint for child support. The parties appeared before a Support Master, who submitted a proposed order that Father pay $2,317 per month for the support of two children, one of whom is not his biological child. Mother and Father both filed Exceptions.

---

[2] The certified record does not contain any copies of Father's tax documents.

The trial court granted the Exceptions and remanded the case to a new Support Master for a full hearing.

The parties appeared before a new Support Master, who submitted a proposed order on December 28, 2015, imputing an annual income of $75,000 to Father and ordering him to pay $1,047 per month for the support of one child. Both parties filed Exceptions. On May 9, 2016, after oral argument, the trial court denied the Exceptions and adopted the Support Master's proposed order as its final order.

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. Did the court err by denying the support [E]xceptions of [Father] and overstating the net income attributable to [Father]?

2. Did the court err by denying the support [E]xceptions of [Father] and understating the net income attributable to [Mother]?

3. Did the court err by exhibiting extreme prejudice against [Father] by stating that he was a "drug dealer" and that he was a "scum"? The decision in denying the support exceptions should be reversed on this basis alone.

Father's Brief at 3 (reordered for ease of disposition).

Our standard of review is well settled in child support cases. "When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an

abuse of discretion or insufficient evidence to sustain the support order."
***Bulgarelli v. Bulgarelli***, 934 A.2d 107, 111 (Pa. Super. 2007) (citations omitted). Further, "an abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." ***Portugal v. Portugal***, 798 A.2d 246, 249 (Pa. Super. 2002) (quotation marks and citation omitted).

"[T]he duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests … through the provision of reasonable expenses." ***Mencer v. Ruch***, 928 A.2d 294, 297 (Pa. Super. 2007) (quotation marks and citations omitted). ***Id***. Child support is awarded pursuant to a Statewide guideline which is based upon the reasonable needs of the child seeking support and the ability of the parent to provide support. ***See*** 23 Pa.C.S. § 4322(a). In making these determinations, the guideline "shall place primary emphasis on the net incomes and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention." ***Id.***[3]

---

[3] Pursuant to the definitions contained in 23 Pa.C.S. § 4302, income "includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business; gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions;

In his first issue, Father avers that the trial court abused its discretion when it imputed an annual income of $75,000 to him. He argues that there was insufficient evidence to support the court's assigned earnings capacity and, more specifically, "no correlation or connection between the decision of earnings capacity and any kind of legal employment available for [Father]." Father's Brief at 18. We agree.

This Court has stated that "a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." **Woskob v. Woskob**, 843 A.2d 1247, 1251 (Pa. Super. 2004) (citations omitted). "[T]he determination of earning capacity does not involve the consideration of what one could theoretically earn." **D.H. v. R.H.**, 900 A.2d 922, 930 (Pa. Super. 2006) (citation omitted). Rather, it is based on "the amount one could

---

income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source." 23 Pa.C.S. § 4302.

It is, therefore, reasonable to presume that the statutory definition includes income derived only from legal sources and activities.

**realistically** earn under the circumstances, considering his or her age, health, mental and physical condition and training." *Id*. (citation omitted) (emphasis added).

With respect to Father's income, the Support Master stated the following in his report:

> The Master does not find the [Father]'s testimony regarding his income to be credible. The [Father] testified he stopped generating income from illegal activities in [2012], but the testimony clearly indicates he continued paying the household expenses for [Mother], provided the [Mother] with weekly spending money and made cash purchases worth tens of thousands of dollars until September of 2014 when the parties' separated.
>
> As such, based on the testimony offered and in consideration of the [Father]'s monthly expenses and purchases, the Master concludes the [Father] has net annual income in the amount of $75,000.

Report of Master in Support, dated 12/28/15, at 6-7.

Upon denying the parties' Exceptions and accepting the Master's recommendation, the trial court opined:

> [Mother] would have [Father]'s support obligation be based upon the equivalent of his income and lavish spending habits during his drug dealing days, which afforded her designer shoes and clothing, whereas [Father] would have it be based upon his reported 2014 earnings from his businesses, plus rental income, or approximately $24,000. In other words, the court is requested to either calculate a support obligation based upon [Father]'s continued illicit earnings, implicitly condoning same, or calculate a support obligation based upon [Father]'s reported minimal income, which the Master rejected for lack of credibility, particularly since [Father]'s recent spending habits exceeded those earnings.

There was no reported testimony from [Father] denying that he paid the expenses cited by [Mother] in 2014 before the parties separated, which was after he reportedly ceased his illegal activities. Therefore, imputing income based upon [Father]'s recent spending history, as described by [Mother], would fairly reflect [Father]'s earnings available for child support, presumably from his business. This would satisfy the requirements of Rule 1910.16-2(d)(4), which cites earnings history as one of the factors to be considered in setting a support obligation.

* * *

The proposed order of the Master was based upon a calculation of Obligor's spending record, as asserted by [Mother], since [Father]'s testimony about his income was found not to be credible by the Master. Hence, the income imputed to [Father] was based upon the best facts available to the Master showing [Father]'s earnings history. It cannot be concluded that this was a manifestly unreasonable method for calculating an earning capacity.

Trial Court Opinion, filed 7/19/16, at 7-8.

We disagree with the trial court's assessment. The trial court first implies that Father is earning money from his "continued illicit earnings," but then states that Mother's description of Father's spending history "would fairly reflect his earnings available for child support, presumably from his businesses." Trial Court Opinion, filed 7/19/16, at 7. As stated previously, the determination of earning capacity should not involve the consideration of what a party could **theoretically** earn, but rather the amount a party could **realistically** earn under the circumstances. *See **D.H. v. R.H., supra*** at 930 (citations omitted). As such, the trial court should not "presume" where income is coming from; rather, it must consider the evidence presented to

determine the amount of income that Father could realistically earn under the circumstances.

We find further error in the trial court's conclusion that it relied on Rule 1910.16-2(d)(4) to determine Father's earning capacity. **See** Trial Court Opinion, filed 7/19/16, at 7; Pa.R.Civ.P. No. 1910.16-2(d)(4). Nothing in the record supports that conclusion.

Pa.R.Civ.P. No. 1910.16-2, pertaining to the calculation of income for purposes of determining child support obligations, requires the trier of fact to determine "that a party to a support action has willfully failed to obtain or maintain appropriate employment," and then "the trier of fact may impute to that party an income equal to the party's earning capacity." Pa.R.Civ.P. No. 1910.16-2(d)(4). The Rule then requires that "age, education, training, health, work experience, earnings history and child care responsibilities" be considered in determining earning capacity for one full-time position. **Id.** Further, the Rule states: "[d]etermination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment." **Id.**

In the instant case, the record is devoid of evidence that Father "willfully failed to obtain or maintain appropriate employment[.]" Pa.R.Civ.P. No. 1910.16-2(d)(4). Although the record **does** reflect that Father had, at

one point, engaged in illegal activities to earn an income, that "employment" is neither "appropriate" nor in the best interest of the child. Father's assertion that he no longer deals drugs does not support any conclusion relevant to a consideration of whether he "willfully failed to obtain or maintain appropriate employment." *Id.*

In addition, even assuming *arguendo* that Father had willfully failed to obtain or maintain appropriate employment, the record reflects that the trial court's determination of Father's earning capacity was based solely on Father's spending history.[4] The trial court had inadequate evidence from which to determine what would constitute a "reasonable work regimen" for Father, or from which to consider the relevant factors, including "age, education, training, health, work experience, earnings history and child care responsibilities[.]" *Id.*

Rule 1910.16-2(d)(4) requires a thorough inquiry into the relevant factors necessary to establish Father's true earning capacity. *See Haselrig v. Haselrig*, 840 A.2d 338, 341 (Pa. Super. 2003) ("the law in Pennsylvania clearly requires the trial court conduct a full inquiry before making a factual

---

[4] Spending history may certainly reflect a party's assets. However, if assets are not producing income as defined by 23 Pa.C.S. §4302, they may only be considered after the trial court determines a deviation from the guidelines is appropriate. *See* Pa.R.Civ.P. 1910.16-5. Here, the Support Master stated that a deviation from the guidelines was not warranted and the trial court adopted that finding. Report of Master in Support, hearing date 12/28/15, at 7-8.

J. S10017/17

determination of an obligor's true earning capacity"). Here, that thorough inquiry did not occur and the record contains insufficient evidence from which to impute an earning capacity to Father based on appropriate (*i.e.* legal) employment.

Accordingly, we remand for a full evidentiary hearing to determine if imputing an earning capacity is proper and what that earning capacity should be based on the factors described in Rule 1910.16-2(d)(4).

In light of our disposition, we decline to address Appellant's remaining issues.[5]

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/9/2017

---

[5] By command of our Supreme Court, this Court is not permitted, *sua sponte*, to order a judge to recuse herself from a case. **Commonwealth v. Whitmore**, 912 A.2d 827, 833-32 (Pa. 2006). We nonetheless would be remiss if we did not express our concern about the trial court's remarks on the record regarding Mother and Father, referring to them as "Ms. Princess" and a "scumbag drug dealer[,]" and stating that "both of them are like, you know, scumbag personified." N.T. Exceptions Hearing, 5/9/16, at 17-18. Father has the option to file a Motion for Recusal upon remand and develop an appropriate record.

- 10 -