J-A07031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| G.Y. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.O.Y. | : | |
| | : | |
| Appellant | : | No. 1197 MDA 2017 |

Appeal from the Order Entered July 5, 2017
In the Court of Common Pleas of Dauphin County Domestic Relations at
No(s): 63 DR 2017,
PACSES No. 223116333

BEFORE: PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.: **FILED MAY 08, 2018**

M.O.Y. ("Father") appeals from the order of the Court of Common Pleas of Dauphin County, Domestic Relations Division, directing that he pay child support. Herein, Father contends the court miscalculated his earning capacity by relying on outdated information and failed to give proper consideration to his obligations to support other his other children from other marriages. We affirm.

The trial court sets forth pertinent facts and procedural history as follows:

> The parties, Mother G.E.Y. and Father M.O.Y., were married in June 2009, in Alberta, Canada and are the parents of a son who was born in Dauphin County in August 2009. The parties were not living together at the time of the child's birth and the child has always lived in Dauphin County with Mother while Father has primarily resided in Canada.

---
\* Former Justice specially assigned to the Superior Court.

Father was born in Mauritania and initially came to the U.S. on a student visa in approximately 2004, attending a Master's degree program at Towson University. In early 2008, after he had completed his Master's Degree and because his student visa had expired or was expiring, he moved to Canada and eventually became a Canadian citizen. Father married his first wife around the time his student visa was expiring though they divorced soon thereafter.[1] (Exbt. P-2). In October 2008, after Father left this country, a U.S. court issued a deportation order.

---

[1] Mother's attorney suggested at the hearing that Father paid his first wife to marry him so he could stay in the U.S. Father denied this. (N.T. 37-38).

---

In 2012, Mother later initiated Dauphin County divorce proceedings and they were divorced by decree in May 2012. (No. 2012 CV 1109 DV). Around the same time, Mother initiated a Dauphin County custody action and the parties agreed by stipulation that Mother would maintain sole legal and primary physical custody of their son. Father was granted visitation rights as agreed by the parties. (No. 2012 CV 1954 CU). Following the divorce, Father married a Mauritanian woman. He claims to have three children with her (born between 2012 and 2016) who live with her in Mauritania. Father and his third wife separated in January 2016 and divorced sometime in 2016 or early 2017. (Exbt. DRO-1). He also claims to have fathered another child who lives in California and is currently around eleven years old. On April 7, 2017, Father married his fourth and current wife in Florida. (N.T. 48). His new wife is Mauritanian and is eighteen or nineteen years of age. (N.T. 48). She lives in New Jersey and holds U.S. permanent resident status (Green Card). (N.T. 41-42, 48, 65).

In late 2016 or early 2017, Father was granted a visa to enter the U.S. as a visitor, under which he can visit the U.S. for up to five years. In January 2017, Father entered the U.S. and made contact with Mother (N.T. 8; Exbt. P-1), who subsequently filed this current action seeking child support.

Following a Domestic Relations Section (DRS) conference, [the trial court] signed the order recommended by the conference officer, directing that effective January 17, 2017, Father pay child support of $551 per month plus $60 per month on arrears. In

arriving a the recommended amount, the conference officer assigned Mother a monthly net income of $4,595 based upon her gross annual salary of just over $70,000 working as an accountant. Father was assigned an earning capacity of $50,000 based upon his recent Canadian employment in database entry, a monthly net income of $3,205.

Based upon these figures, Father's support obligation for one child under the Support Guidelines was $503 per month. That figure was adjusted upward by $48, to $551 per month, to account for Father's proportional share (41%) of the child's monthly medical insurance cost ($116) paid by Mother. The conference officer rejected [Father's] claim that his child support should be reduced because he has four other children to support. Father filed a timely request for de novo review which was held before [the trial court on] July 5, 2017.[2]

---

[2] The hearing was a dual hearing on Father's support appeal (see N.T. 7/5/17 at 60-73) as well as on his claim that Mother was in contempt of the parties' 2012 custody agreement for not allowing him to visit their son. (*Id*. at 1-60).

---

### *De Novo* Hearing

Father is currently 41 or 44 years old.[3] (N.T. 28-31). He testified that in 2016 he earned $43,124 gross income, in Canadian dollars, working in a database entry position. (N.T. 65, 66, 68). He claimed to have lost that job and later worked for a few weeks in a temporary job before moving to the U.S. at the beginning of 2017. (N.T. 65). He is currently unemployed though he claims he has applied for many jobs. (N.T. 69). According to Father, he is in the process of obtaining a visa that will permit him to work in the U.S. under NAFTA, so long as he has an agreement from an American employer that it will hire him.[4] (N.T. 42). Father complained that his 2006 Master's Degree in computer science is outdated and that over the past ten years or so, he has been employed mostly as a taxi driver and security guard. (N.T. 66).

---

[3] Father's date of birth is listed as January 1, 1973 on numerous official documents. He claimed, however, that the correct date is December 9, 1976, and that the incorrect date was initially

- 3 -

recorded upon his entry into the U.S. on his student visa and has been repeated on all subsequent official documents. (N.T. 28-31).

[4] Father testified the visa that would permit him to do this is called an "MT visa." (N.T. 42) There does not appear to be such a visa. Father appears instead to be referring to a "TN visa." The TN visa was created under NAFTA and allows Canadian citizens to work in the U.S. in certain listed professional occupations, including computer systems, so long as the Canadian citizen has an offer of employment in the U.S[. . . .]

During the course of the hearing, Mother submitted into evidence copies of Father's LinkedIn page/account. (N.T. 41; Exbt. P-3 [5]). In them, Father recites his educational background including a 2004 Bachelor's Degree in Information Technology from Strayer University (Va.) and a 2006 Master's Degree in Computer Science from Towson University. (Exhbt. P-3). In addition, he attended the Southern Alberta Institute of Technology (SAIT) between 2015 and 2016 earning a Database Administrator Certificate. (*Id*.) He further lists his Canadian employment history as follows: database analyst/DBA with Mobile Maestria commencing April 2016 as well as database administrator with a series of entities between April 2007 and December 2014 including The World Bank Group—IMF, Shell, Kelly Services, Lordco Auto Parts and Soroc Technology. He also lists a past employment position of IT specialist with Time Business Machines from January 2009 to July 2009. (*Id*.)

[5] Two versions of Father's LinkedIn account page were presented to [the trial] court at the hearing and are both identified as Plaintiff's Exhibit No. 3. They include identical detailed descriptions of Father's employment history and educational background. One version is an undated text only print-out while the other is a screenshot from the website and includes a photo of Father, other LinkedIn graphics as well as an identification of the website address and date of printing (June 23, 2017).

Father claimed that his new wife is totally dependent upon him, although he admitted that he was living with his wife's father as

of the hearing and that his wife's father is supporting both him and his new wife. (N.T. 68). Finally, he claimed that in addition to helping support his child with Mother here, he also supports his four other children.

The DRS conference officer testified that he assigned Father an earning capacity of $50,000, based upon Father's recent earnings in Canada. (N.T. 61). The hearing officer also discussed the document Father provided at the initial conference, titled "Divorce and Child Support Agreement," dated January 30, 2017, submitted on the letterhead of the Mauritanian Embassy and translated from Arabic. (Exbt. DRO-1). The document states that on April 17, 2016, Father and his third wife agreed to divorce and that Father further agreed to pay her $1200 per month in U.S. dollars to support their three children. (*Id*.) the hearing officer testified that he doubted the legitimacy of the document inasmuch as it reflected Father's agreement to pay child support in U.S. dollars at a time he was living in Canada and his ex-wife was living in north Africa. (N.T. 63-64). He also did not consider two receipts submitted by Father after the conference allegedly showing he made some payments to his Mauritanian ex-wife, because they were not current. (Exbts. DRO-2, DRO-3).

Following the hearing, [the trial court] denied Father's *de novo* appeal by order issued July 5, 2017, and directed the order remain at $551 per month plus $60 per month on arrears.[6] Father . . . filed an appeal to the Superior Court [on July 25, 2017].

---

[6] Less than two weeks after [the trial court] issued [its] order denying his support appeal, Father filed a petition to modify support (dated July 18, 2017) claiming that he has no current income due to unemployment and has a low earning capacity. He attached some documents that he had not previously presented to the conference officer or the court including his ten-year income history from the Canada Revenue Agency and a Resume showing past employment history and educational background. The Domestic Relations Conference Officer held a conference on his petition, following which the officer recommended no change to the $551 per month order. A *per curiam* order was thereafter issued by [the trial court] August 8, 2017, dismissing the petition to modify. Father has requested *de novo* review from this most recent order which is pending.

Trial Court Opinion, 9/27/17, at 1-4.

On appeal, Father maintains the court set an erroneously high earning capacity and failed to account properly for his obligation to support four other children.

As a prefatory matter, we note:

> [A]ppellate briefs and reproduced records must materially conform to the requirement of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. This Court may quash or dismiss an appeal if the appellant fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. **Id.**; **Commonwealth v. Lyons**, 833 A.2d 245 (Pa. Super. 2003). Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. **Id.** at 252. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. **Commonwealth v. Rivera**, 454 Pa. Super. 451, 685 A.2d 1011 (1996).

**Commonwealth v. Adams**, 882 A.2d 496, 497–98 (Pa. Super. 2005).

"Appellate arguments which fail to adhere to [the Rules of Appellate Procedure] may be considered waived, and arguments which are not appropriately developed are waived." **Coulter v. Ramsden**, 94 A.3d 1080, 1088 (Pa. Super. 2014). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." **In re R.D.**, 44 A.3d 657, 674 (Pa. Super. 2012). "We will not act as counsel and will not develop arguments on behalf of an appellant. Moreover, when defects in a brief impede our ability to

conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived." *Id.* at 674. ***See also Commonwealth v. Gould***, 912 A.2d 869, 873 (Pa. Super. 2006) (holding appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record).

Instantly, Father's thee-page brief is woefully deficient. We initially note it lacks a statement of the questions involved, ***see*** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."), and it fails to include a summary of the argument as required by Pa.R.A.P. 2118. Father's argument section, moreover, is bereft of a heading, is not divided into parts in violation of Pa.R.A.P. 2119, and, critically, presents an underdeveloped argument comprising factual claims rejected below as incredible and bare assertions of court error unsupported by citations to legal authority. ***See*** Appellant's Brief at 1-3 (unpaginated). Hence, we deem Father's issues waived for his failure to raise them adequately in his brief and advance them appropriately with meaningful arguments in compliance with the Pennsylvania Rules of Appellate Procedure.

Even if Father had properly advanced his claims, we would affirm on the basis of the trial court's opinion. We have reviewed the certified record, the briefs of the parties, the applicable law, and the opinion of the Honorable Jeannine Turgeon, Domestic Relations Section, filed on September 27, 2017. We conclude that Judge Turgeon's comprehensive, well-reasoned opinion

correctly disposes of the issues presented by Father, and we would discern no abuse of discretion or error of law. Accordingly, we adopt Judge Turgeon's opinion as our own and affirm the July 5, 2017, order dismissing Father's request to reduce his child support obligation.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2018

Copies Mailed 9-27-17

G.E.Y.,
    Plaintiff/Obligee

        v.

M.O.Y.,
    Defendant/Obligor

: DAUPHIN COUNTY PENNSYLVANIA

:

: No. 0063 DR 2017; PACSES 223116333

:

: SUPPORT APPEAL

## MEMORANDUM OPINION

Before the court is the appeal filed by M.O.Y. from an order directing he pay child support. This opinion is written in support of the order, pursuant to Pa.R.A.P. 1925(a).

## Background

The parties, Mother G.E.Y. and Father M.O.Y., were married in June 2009 in Alberta, Canada and are the parents of a son who was born in Dauphin County in August 2009. The parties were not living together at the time of the child's birth and the child has always lived in Dauphin County with Mother while Father has primarily resided in Canada.

Father was born in Mauritania and initially came to the U.S. on a student visa in approximately 2004, attending a Master's degree program at Towson University. In early 2008, after he had completed his Master's Degree and because his student visa had expired or was expiring, he moved to Canada and eventually became a Canadian citizen. Father married his first wife around the time his student visa was expiring though they divorced soon thereafter.[1] (Exbt. P-2) In October 2008, after Father left this country, a U.S. court issued a deportation order.

In 2012, Mother later initiated Dauphin County divorce proceedings and they were divorced by decree in May 2012. (No. 2012 CV 1109 DV) Around the same time, Mother initiated a Dauphin County custody action and the parties agreed by stipulation that Mother would maintain sole legal and primary physical custody of their son. Father was granted visitation rights as agreed by the parties. (No. 2012 CV 1954 CU) Following the divorce, Father married a Mauritanian woman. He claims to have three children with her (born between 2012 and 2016) who live with her in Mauritania. Father and his third wife separated in January 2016 and divorced sometime in

---

[1] Mother's attorney suggested at the hearing that Father paid his first wife to marry him so he could stay in the U.S. Father denied this. (N.T. 37-38)

1

2016 or early 2017. (Exbt. DRO-1) He also claims to have fathered another child who lives in California and is currently around eleven years old. On April 7, 2017, Father married his fourth and current wife in Florida. (N.T. 48) His new wife is Mauritanian and is eighteen or nineteen years of age. (N.T. 48) She lives in New Jersey and holds U.S. permanent resident status (Green Card). (N.T. 41-42, 48, 65)

In late 2016 or early 2017, Father was granted a visa to enter the U.S. as a visitor, under which he can visit the U.S. for up to five years. In January 2017, Father entered the U.S. and made contact with Mother (N.T. 8; Exbt. P-1), who subsequently filed this current action seeking child support. Following a Domestic Relations Section (DRS) conference, I signed the order recommended by the conference officer, directing that effective January 17, 2017, Father pay child support of $551 per month plus $60 per month on arrears. In arriving at the recommended amount, the conference officer assigned Mother a monthly net income of $4,595 based upon her gross annual salary of just over $70,000 working as an accountant. Father was assigned an earning capacity of $50,000 based upon his recent Canadian employment in database entry, a monthly net income of $3,205. Based upon these figures, Father's support obligation for one child under the Support Guidelines was $503 per month. That figure was adjusted upward by $48, to $551 per month, to account for Father's proportional share (41%) of the child's monthly medical insurance cost ($116) paid by Mother. The conference officer rejected his claim that his child support should be reduced because he has four other children to support. Father filed a timely request for de novo review which was held before me July 5, 2017.[2]

### De Novo Hearing

Father is currently 41 or 44 years old.[3] (N.T. 28-31) He testified that in 2016 he earned $43,124 gross income, in Canadian dollars, working in a database entry position. (N.T. 65, 66, 68) He claimed to have lost that job and later worked for a few weeks in a temporary job before moving to the U.S. at the beginning of 2017. (N.T. 65) He is currently unemployed though he claims he

---

[2] The hearing was a dual hearing on Father's support appeal (see N.T. 7/5/17 at 60-73) as well as on his claim that Mother was in contempt of the parties' 2012 custody agreement for not allowing him to visit their son (Id. at 1-60).

[3] Father's date of birth is listed as January 1, 1973 on numerous official documents. He claimed, however, that the correct date is December 9, 1976, and that the incorrect date was initially recorded upon his entry into the U.S. on his student visa and has been repeated on all subsequent official documents. (N.T. 28-31)

2

has applied for many jobs. (N.T. 69) According to Father, he is in the process of obtaining a visa that will permit him to work in the U.S. under NAFTA, so long as he has an agreement from an American employer that it will hire him.[4] (N.T. 42) Father complained that his 2006 Master's Degree in computer science is outdated and that over the past ten years or so, he has been employed mostly as a taxi driver and security guard. (N.T. 66)

During the course of the hearing, Mother submitted into evidence copies of Father's LinkedIn page/account. (N.T. 41; Exbt. P-3 [5]) In them, Father recites his educational background including a 2004 Bachelor's Degree in Information Technology from Strayer University (Va.) and a 2006 Master's Degree in Computer Science from Towson University. (Exbt. P-3) In addition, he attended the Southern Alberta Institute of Technology (SAIT) between 2015 and 2016 earning a Database Administrator Certificate. (Id.) He further lists his Canadian employment history as follows: database analyst/DBA with Mobile Maestria commencing April 2016 as well as database administrator with a series of entities between April 2007 and December 2014 including The World Bank Group–IMF, Shell, Kelly Services, Lordco Auto Parts and Soroc Technology. He also lists a past employment position of IT specialist with Time Business Machines from January 2009 to July 2009. (Id.)

Father claimed that his new wife is totally dependent upon him, although he admitted that he was living with his wife's father as of the hearing and that his wife's father is supporting both him and his new wife. (N.T. 68) Finally, he claimed that in addition to helping support his child with Mother here, he also supports his four other children.

The DRS conference officer testified that he assigned Father an earning capacity of $50,000, based upon Father's recent earnings in Canada. (N.T. 61) The hearing officer also

---

[4] Father testified the visa that would permit him to do this is called an "MT visa." (N.T. 42) There does not appear to be such a visa. Father appears instead to be referring to a "TN visa." The TN visa was created under NAFTA and allows Canadian citizens to work in the U.S. in certain listed professional occupations, including computer systems, so long as the Canadian citizen has an offer of employment in the U.S. See https://travel.state.gov/content/visas/en/employment/nafta.html.

[5] Two versions of Father's LinkedIn account page were presented to this court at the hearing and are both identified as Plaintiff's Exhibit No. 3. They include identical detailed descriptions of Father's employment history and educational background. One version is an undated text only print-out while the other is a screenshot from the website and includes a photo of Father, other LinkedIn graphics as well as an identification of the website address and date of printing (June 23, 2017).

3

discussed the document Father provided at the initial conference, titled "Divorce and Child Support Agreement," dated January 30, 2017, submitted on the letterhead of the Mauritanian Embassy and translated from Arabic. (Exbt. DRO-1) The document states that on April 17, 2016, Father and his third wife agreed to divorce and that Father further agreed to pay her $1200 per month in U.S. dollars to support their three children. (Id.) The hearing officer testified that he doubted the legitimacy of the document inasmuch as it reflected Father's agreement to pay child support *in U.S. dollars* at a time he was living in Canada and his ex-wife was living in north Africa. (N.T. 63-64) He also did not consider two receipts submitted by Father after the conference allegedly showing he made some payments to his Mauritanian ex-wife, because they were not current. (Exbts. DRO-2, DRO-3)

Following the hearing, I denied father's de novo appeal by order issued July 5, 2017 and directed the order remain at $551 per month plus $60 per month on arrears.[6] Father has since filed an appeal to the Superior Court.

## Legal Discussion

In a letter attached to his appeal documents, Father states "this note to show real reason for my appeal for court order from Mauritania, job lost and my wage capacity that the last court decision did not consider." He then lists and attaches a number of documents to his appeal that he believes the court failed to consider including the Mauritanian Embassy document described above, which Father did submit at the *de novo* hearing (concerning his alleged support obligation for his three Mauritanian children). Father also attached numerous documents that were not submitted at the *de novo* hearing. This court takes the letter and attached documents as Father's formal statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i)), although I did not and will not consider in

---

[6] Less than two weeks after I issued my order denying his support appeal, Father filed a petition to modify support (dated July 18, 2017) claiming that he has no current income due to unemployment and has a low earning capacity. He attached some documents that he had not previously presented to the conference officer or the court including his ten-year income history from the Canada Revenue Agency and a Résumé showing past employment history and educational background. The Domestic Relations Conference Officer held a conference on his petition, following which the officer recommended no change to the $551 per month order. A per curiam order was thereafter issued by this Court August 8, 2017 dismissing the petition to modify. Father has requested *de novo* review from this most recent order which is pending.

4

addressing the merits of his appeal those documents not previously submitted into evidence at his *de novo* hearing.[7]

Distilled to their essence, Father's overarching claims are that this court erred by assigning him an earning capacity not reflective of past earnings, current lack of employment, employment history and education, and for failing to consider the difficulty of obtaining employment in the current economy. He also suggests I failed to consider that he owes child support for his other children, including his obligation imposed under the Mauritanian support agreement.

Generally, parents have an absolute obligation to support their children and this obligation "must be discharged by the parents even if it causes them some hardship." Mencer v. Ruch, 928 A.2d 294, 297 (Pa. Super. 2007) (citations and internal quotation marks omitted). "[I]n Pennsylvania, a person's income must include his earning capacity, and a voluntary reduction in earned income will not be countenanced[.]" Id. "Where a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity[,]" not equal to his or her actual earnings. Ney v. Ney, 917 A.2d 863, 866 (Pa. Super. 2007) (citation omitted).

The applicable Support Guidelines addressing earning capacity state as follows:

**Rule 1910.16-2. Support Guidelines. Calculation of Net Income.**

**(d) Reduced or Fluctuating Income.**

\* \* \*

(4) *Earning Capacity.* If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working

---

[7] These include Canada Revenue Agency paperwork reflecting his income there between 2007-2016, Résumé listing his past employer information and educational background for the past ten years, two news articles about the alleged worthlessness of college degrees and recent paystub information reflecting Father's income in 2017 performing database entry for a U.S. firm.

5

conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).[8]

"[A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings." Baehr v. Baehr, 889 A.2d 1240, 1244-45 (Pa. Super. 2005) (citing Woskob v. Woskob, 843 A.2d 1247, 1251 (Pa. Super. 2004) (citations omitted)). "[A] person's earning capacity is defined not as an amount which the person could theoretically earn, but as that amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." Haselrig v. Haselrig, 840 A.2d 338, 340 (Pa. Super. 2003) (quoting Strawn v. Strawn, 664 A.2d 129, 132 (Pa. Super. 1995)).

In denying Father's support appeal, I found that based upon the evidence, he has willfully failed to obtain appropriate employment commensurate with his earning capacity. I further found that based upon an evaluation of his age, education, training, health, work experience, earnings history and child care responsibilities, that his realistic earning capacity is at least $50,000 per year. Notably, Father, currently age 41 or 44, is in his prime working years and holds a Master's Degree in computer science. The LinkedIn account page submitted into evidence at the *de novo* hearing reveals that in addition to this degree, he has also recently updated his education with Database Administrator Certification. The evidence further showed he has a somewhat lengthy recent history of employment as a database analyst, database administrator and IT specialist. He most recently made $43,124 gross income in 2016 (Canadian dollars) working in a database entry position that did not last a full year and at a time he was attending SAIT as a student.

While Father denied that the LinkedIn account was his and claimed information listed therein about his degrees and places of employment was "absolutely false" (N.T. 41, 67), his denial is not credible. The LinkedIn printouts submitted show a photo of Father and accurately reflects a number of facts known from other sources to be true including his attainment of a Master's Degree

---

[8] The Rules of Civil Procedure promulgated by the Supreme Court, have the force of statute. Maddas v. Dehaas, 816 A.2d 234, 238 (Pa. Super. 2003), appeal denied, 827 A.2d 1202 (Pa. 2003).

6

from Towson and that he was recently employed as a database analyst in Canada.[9] Outside of his bald claims of falsity, Father failed to identify any specific portions of the LinkedIn page he claimed were false and/or suggest that the information was submitted to LinkedIn by someone other than himself. Relatedly, I did not find credible his testimony that he has been employed primarily as a taxi driver and security guard. Nevertheless, even if those claims were true, such employment history would reveal that Father has been underemployed, without offering any valid reasons why that is so when he has the ability to find employment in the normally lucrative and high-demand field of computer science. There is no evidence he has any workplace limitations or deficiencies that would explain such underemployment.

Regarding his claim that he has to support other children, he provided no evidence he has made any payments on their behalf or is under any legal obligation to do so. As I noted at the hearing, the Mauritanian document he submitted reflects only his agreement to *voluntarily* pay support for those children. (N.T. 72) He submitted no current payments of support for his other children. I therefore did not reduce his presumptive Support Guidelines obligation for the child subject to this action.

Accordingly, I denied father's request to reduce his child support obligation.

_____September 27, 2017_____
Date

Jeannine Turgeon, Judge

September 29, 2017

I hereby certify that the foregoing is a true and correct copy of the original filed.
No. 63 VM Term, 2017

Prothonotary
Stephen C. Harina

Distribution:

M.O.Y.
P.O.B. 73201
Washington D.C. 20056

Denean Russo, Esq.
931 Russell Drive, Suite A
Lebanon Pa. 17042
(for G.E.Y.)

Kim Robison, DRO Director

[9] Father verified at the hearing he has a 2006 Master's Degree from Towson State in computer science. (N.T. 66) The fact of Father's recent employment as a database analyst with Mobile Maestria in Canada was confirmed in the amended appeal documents (Résumé) submitted by Father to this court August 2, 2017.