594 A.2d 649

**Paula OELER, a minor, by Sally L. GROSS, her guardian, Appellee,**

v.

**Richard H. OELER, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided July 18, 1991.

Emil W. Kantra, II, for appellant.

Edward J. Zamborsky, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This appeal presents a question of first impression of whether a parent can be compelled to support a minor child who unilaterally chooses to reside in her own apartment. Specifically, we are asked to review the order of the Superior Court reversing the order of the Court of Common Pleas of Lehigh County which adopted the recommendation of a domestic relations hearing officer and effectively terminated child support for the parties' minor daughter, 392 Pa.Super. 660, 564 A.2d 268. Because the issue presented has a far-reaching effect upon support law and the family unit, we granted review.

As do most domestic cases, this one has a long court-related history beginning in 1974 when the parties separated and continuing since then with various support-related proceedings. At the time of separation, the parties had three minor children, two sons and one daughter. When this most recent controversy arose, both sons were in college and no longer the subject of the existing support order entered on April 1, 1975. Only Paula, age 17, remained a subject of the original support order which had been modified due to various changes in circumstances.

Although the record is void of any custody orders, it appears undisputed that at least prior to 1985, the father had primary physical custody of his daughter, Paula. Based upon this order, Paula lived with her father from January, 1985 through May, 1986. Because the father resided outside of the Allen High School jurisdiction, the father paid Paula's tuition to enable her to continue to attend that high school. Notwithstanding the existing order and without modifying that order, Paula moved back with her mother in June of 1986, where she remained until late December of 1987.

On or about December 29, 1987, the parties entered into a support stipulation, which was incorporated into an order of court of the same date. According to the stipulation, the

father's support obligation for Paula was set at $900.00 per month retroactive to June 15, 1987. Furthermore, in accordance with the parties' stipulations, the court included the following provisions in its order of December 29, 1987:

1. Should actual physical custody of Paula Oeler change from the Plaintiff to Defendant or any third party in the future, this Order shall be automatically subject to review.

2. In the event that Paula Oeler shall no longer be in actual physical custody of the Plaintiff, the Defendant, Richard Oeler, shall begin immediately to pay ... $300.00 per month.

Apparently, on the same day the court was entering this modified support order, the mother was relocating to New Haven, Connecticut. Based upon this move and the fact that Paula no longer resided with the mother, on December 31, 1987 the father filed for a modification of his support payments in accordance with paragraph 2 of the December 29, 1987 Order of Court.

At some point prior to the mother's move, the father was advised by his daughter that her mother intended to relocate to Connecticut to pursue an internship at Yale University Art Gallery. The father then advised his daughter that she was welcome to reside with him in order to complete her high school education at Allen High School. During their conversation, Paula indicated to her father that she and her mother intended to make arrangements for Paula to live with a local family until graduation. Based upon this representation, the father indicated he would provide monetary assistance to the family that Paula resided with, so long as he deemed that family appropriate.

When Paula and her mother were unable to secure a temporary living arrangement with a family in Allentown near the school, they unilaterally and without any notice or discussion with the father, entered into a lease for an apartment for Paula. Paula's apartment was a one-bedroom apartment in a three-apartment building in Allentown with a monthly rental of $335.00 per month. Thereafter,

Paula's mother sought reimbursement of expenses incurred by Paula, from the father.

During the hearing, testimony was given by the parties and their daughter. All parties agreed that the father was willing to have Paula reside with him at his expense to enable her to complete her final year of high school at Allen High School. The mother testified that in good conscience she could not or would not force her daughter Paula to live with her father. To do so, the mother felt it would effectively be taking advantage of her daughter because by making this forced living arrangement, the mother would then be free to persue her own goals or opportunities and that being her desire to receive an internship at Yale University Art Gallery. Paula testified that she did not want to live with her father because she and her stepmother did not get along. Specifically, her stepmother was "too neat" for her, which meant everything had to be "picked up and put away" which was contrary to her style of living. Although she also indicated that she wanted to live closer to her friends, she admitted that her father's house was only ten to fifteen minutes from her school by car.

Based upon this record, the trial court concluded that the father had made his home available to his daughter and that she had no justifiable reason for refusing to live with him. Furthermore, the court noted that the mother and daughter unilaterally made alternative living arrangements without any consultation with the father. Citing *DeWalt v. DeWalt*, 365 Pa.Super. 280, 529 A.2d 508 (1987), the trial court concluded that Paula's action in refusing her father's offer prevented her from reaping any financial gains.

On appeal, in a memorandum opinion, Superior Court reversed the trial court concluding that the duty of a parent to support his/her minor child is absolute which cannot be waived by actions of that minor child. The court also indicated that rather than pursuing the termination of support, the father had other remedies available to him, such as, an action to modify the custody arrangement.

Because the trial court did not abuse its discretion in terminating the father's obligation to support Paula in her apartment, we must reverse the Superior Court order and reinstate the order of the trial court.

■ Our scope of review in support matters is well settled. Absent an abuse of discretion, we will not disturb on appeal a properly entered support order. *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984). An abuse of discretion "is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *In re Women's Homeopathic Hospital of Philadelphia*, 393 Pa. 313, 316, 142 A.2d 292, 294 (1958).

■ At common law, the duty of a parent to support his child was conditioned upon a parent receiving love, affection and assistance from that child. Contrary to the common law, today, the duty to support a minor child is absolute. *Melzer*, supra. However, in awarding child support, we must be cognizant of its purpose which is to promote the best interests of the child. *Sutliff v. Sutliff*, 515 Pa. 393, 528 A.2d 1318 (1987).

■ It is quite clear from reviewing this record that the father is not refusing to support his daughter. Rather, he is refusing to allow his daughter to dictate the proper allocation of support monies. In other words, the father is willing to provide housing, food, clothing and an education for his daughter. The disagreement arises because Paula wants to reside under her own roof at her father's expense. In granting the father's termination of support request, the trial court believed that Paula offered no justifiable reason for not living with her father. We agree. In essence, the best interest of Paula would not be served by permitting her to reside alone.

■ We must also disagree with the Superior Court's suggestion that either the parents and Paula resolve the

problem (see slip opinion, page 6, footnote 4) or the father file for a modification of custody. First, given the intended purpose of support to promote the best interests of the minor child, a court cannot ignore the existence of an unacceptable living arrangement, even if it becomes aware of such arrangement during a support proceeding. If living conditions are deplorable or support monies are not properly being allocated, then the court has an obligation to rectify the situation. Furthermore, given the very nature of custody and support proceedings and the fact that parties, such as these, require a trial court to resolve differences, it is absurd to ignore reality and expect the parties to amicably resolve a dispute once one party receives the support money being requested. With respect to Superior Court's suggestion that the father's concerns with Paula's living arrangements be addressed through a modification of custody proceeding, our review of the record indicates that the last custody order placed primary physical custody with the father. Strictly speaking, then, the father had every right to approve or disapprove Paula's living arrangements. However, since neither party had truly adhered to the custody order, who, on the record, had primary physical custody of Paula was not relevant to determination of this matter.

The decision of the trial court is reasonable and in complete accord with traditional values of child rearing. What the Supreme Court of Massachusetts cogently stated over a century and a half ago is still applicable today.

> Where a child leaves his parents' house, voluntarily ... to avoid the discipline and restraint so necessary for the due regulations of families, he carries with him no credit; and the parent is under no obligation to pay for his support ...

*Angel v. McLellan,* 16 Mass. 28, 31 (1819). That Supreme Court further commented that to permit the minor, at his election, to depart from his parents' house, with power to charge that parent with his support, would tend to the

destruction of all parental authority, and invert the order of family government.

In short, we can find no fault in the trial court's disposition of this matter. The trial court neither misapplied existing law or values nor exercised its judgment in an unreasonable manner. Accordingly, we must reverse the order of the Superior Court and affirm the order of the Court of Common Pleas of Lehigh County.

It is so ordered.