# Bruner v. Gaskill

*Martha Bruner,* pro se.
*Anthony Sottile III,* for defendant.

HANNA, *J.*, May 10, 2007—This matter comes before the court on defendant's exceptions to the report and recommendation of the permanent hearing officer. For the reasons set forth in this opinion, the court will grant the defendant's exceptions.

## FACTUAL AND PROCEDURAL HISTORY[1]

Robert L. Gaskill is an unemancipated adult (age 19, d.o.b.: January 19, 1988), and is in 11th grade at the Blairsville Area School District. He is the child of Eric Gaskill (Father) and Brenda McDannell (Mother). Robert had been living with Mother pursuant to a 1992 custody order. In August 2006, Robert moved out of Mother's home and into the home of his maternal grandmother, Martha Bruner (Grandmother). The move was done without consulting either parent. Robert moved on his own volition, and Grandmother accepted him into her home because she wanted to create stability in Robert's life. Prior to the move, Father had been paying child support to Mother.

On August 24, 2006, Grandmother filed a complaint for child support against Father and Mother. On September 13, 2006, this court entered an order directing Father to pay $479 per month ($409 in current support of $70 in arrears) to Grandmother for child support. On September 18, 2006, Father filed an appeal and requested a de novo hearing. A hearing was held before the permanent hearing officer, Robert S. Muir, Esquire (PHO), on November 6, 2006. Based on the testimony presented the PHO recommended that Father be directed to pay $488 per month in child support. On November 28, 2006, this

---

1. These facts were derived from the PHO's report, the pleadings and the hearing transcript.

court ordered Father to pay $513 per month ($488 in current support and $25 in arrears) in child support.

On December 21, 2006, Father filed 12 exceptions to the PHO's findings and recommendations:

(1) The PHO erred in finding that Grandmother accepted Robert into her residence because she was interested in creating stability in his life.

(2) The PHO erred in finding that Grandmother falls within the definition of guardian under Pa.R.C.P. 2026(b).

(3) The PHO erred in finding that the living accommodations provided by Grandmother are reasonable.

(4) The PHO erred in finding that Grandmother has standing to bring the action pursuant to Rule 1910.3(e) as a guardian in the nature of next friend.

(5) The PHO erred in finding that the rationale for allowing this case to proceed is different from that presented in the *Elkin* case.

(6) The PHO erred in finding that Grandmother has standing to file for child support even though it was filed after Robert's 18th birthday.

(7) The PHO erred in finding that the only reason the *Oeler* court terminated support was due to the fact that the court found the child to be emancipated.

(8) The PHO erred in finding that Father cannot attempt to avoid support by claiming a desire to have his son reside with him when he has not initiated an action for custody.

(9) The PHO erred in finding that this result does not seem unfair to Father since Father was paying child support for Robert to Robert's mother prior to the residence change.

(10) The PHO erred in finding that the *Solomon* case was decided on the basis that the person of interest was deemed emancipated and that all of the needs of the subject child were being met.

(11) The PHO erred in finding that since Grandmother is a third party, her income is of no relevance and shall not be considered for child support purposes.

(12) The PHO erred in finding that the combined net monthly income of the parties is $2,632.98.

## DISCUSSION AND ANALYSIS

Father's first major issue of contention is that the PHO erred in finding that Grandmother has standing to file for child support. Father argues that Grandmother does not fall within the category of people who are allowed to bring support actions.

23 Pa.C.S. §4341(b) states: "[a]ny person caring for a child shall have standing to commence or continue an action for support of that child regardless of whether a court order has been issued granting that person custody of the child." For domestic relations purposes, a child is defined as "[a]ny unemancipated person under 18 years of age." 23 Pa.C.S. §5302. The PHO found that Robert Gaskill is not a child under this definition, and therefore Grandmother does not have standing under 23 Pa.C.S. §4341(b). The court agrees with this finding.

Further, Pa.R.C.P. 1910.3(e) provides that a support action may be brought "by a parent, guardian or public or private agency on behalf of an unemancipated child over 18 years of age to whom a duty of support is owing." Grandmother obviously does not fall into either the category of parent or agency. Therefore, the only catego-

ry she could fall into is guardian. The PHO found that Grandmother is a guardian, relying on the definition of guardian in Pa.R.C.P. 2026, which states: "'guardian,' except where the context otherwise indicates, means the party representing the interest of a minor party in any action, whether as (a) the guardian of a minor appointed by any court of competent jurisdiction, (b) a person in the nature of a next friend selected to represent a minor plaintiff in an action, or (c) a guardian ad litem specifically appointed by the court in which the action is pending."

The PHO found that Grandmother satisfied subsection (b) of 2026 and that she had standing as Robert's next friend. Father argues this finding is incorrect because next friend status requires representation of a minor plaintiff in an action, and Robert was not a minor at the time the action was instituted. This issue was addressed by the Pennsylvania Superior Court in *Elkin v. Williams,* 755 A.2d 695 (Pa. Super. 2000), where an 18-year-old unemancipated adult moved in with a family friend while he finished high school. The *Elkin* court found that the family friend did not fit the definition of "guardian" under 1910.3(e) because the 18-year-old was not a minor. *Id.* at 699. Like the family friend in *Elkin,* Grandmother does not fit the description of a guardian as it is used in Rules 1910.3(e) and 2020(b) because Robert was not a minor at the time that the action was instituted. Therefore, the court finds that Grandmother did not have standing to bring this support action because she does not meet the statutory requirements.

Further, even if Grandmother did have standing to bring the action, she is still not entitled to support under Pennsylvania case law. In *Oeler v. Oeler,* 527 Pa. 532, 594 A.2d

649 (1991), the Pennsylvania Supreme Court found that the trial court properly terminated child support when a 17-year-old child chose to live in her own apartment and did not offer justifiable reason for not living with her father. The court stated that the father clearly did not refuse to support his daughter. Rather, the father was "refusing to allow his daughter to dictate the proper allocation of support monies." *Id.* at 537, 594 A.2d at 651.

Further, in *Elkin,* the Superior Court cited *Oeler* and stated that an unemancipated adult "may not prevail in departing from [his] mother's home claiming attainment of majority and a desire to attend a certain high school, and then charge [mother] with his support." 755 A.2d at 699. The court further noted that, even though a parent has the duty of supporting a child until the child reaches 18 or graduates from high school, the parent does not have to be subjected to the child dictating how or to whom the support should be allocated.

Additionally, in *Solomon v. Solomon,* 13 D.&C.4th 395, 400 (Westmoreland Cty., 1991), the trial court cited *Oeler,* stating:

"If the Supreme Court has concluded that support need not be paid when a minor child refuses to live with a parent, it appears all the more clear that an adult child cannot compel a parent to pay for her support when she chooses not to reside with a parent who has offered his home."

In that case, an unemancipated 18-year-old woman chose to live with her former foster mother rather than live with her father, who had offered his home to her.

In the present case, as in *Oeler* and *Elkin,* Robert was trying to dictate the allocation of support monies. He apparently no longer wished to live with Mother, to

whom Father was obligated to pay Robert's support. He also did not wish to live with Father, who could provide his support directly. Rather, Robert wanted to choose to live apart from both of his parents and still reap the benefits of their support.[2]

Further, as in *Solomon,* there was testimony that Father was willing to allow Robert to live with him. (Hearing transcript, page 18.) This court agrees with the *Solomon* court that, based on *Oeler,* it would be particularly unfair to compel a parent to pay support for his adult child when he is willing to directly provide support to the child by taking the child into his home.

Therefore, because Robert chose to live with Grandmother instead of Father, and the record shows no justifiable reason for doing so, the court finds that Father is not obligated to pay support to Grandmother.

Wherefore, the court makes the following order.

## ORDER

And now, May 10, 2007, this matter having come before the court on the defendant/Father's exceptions and the court having heard oral argument thereon, and based upon the argument, and the court's review of the record, it is hereby ordered and directed that the defendant/Father's exceptions are granted and this court's orders of November 28, 2006 and September 13, 2006 are vacated.

---

2. The court notes that the *Oeler* court focused on the fact that the daughter in that case did not have a "justifiable reason" for not living with her father. Here, as in *Oeler,* the record is devoid of any evidence of a justifiable reason for why Robert cannot live with Father. If Grandmother had standing, a different outcome may have occurred if such evidence had been presented.