**Heather MENCER, Appellant**

v.

**Gary RUCH, Appellee.**

Superior Court of Pennsylvania.

Argued April 10, 2007.
Filed June 14, 2007.

Melissa H. Shirey, Erie, for appellant.

Gregory L. Heidt, Erie, for appellee.

Before ORIE MELVIN, BOWES and TAMILIA, JJ.

OPINION BY BOWES, J.:

¶ 1 Heather Mencer ("Mother") appeals the trial court's refusal to impute any income to Gary Ruch ("Father") for child support purposes. We reverse and remand for entry of an appropriate award of child support.

¶ 2 On April 3, 2003, Mother instituted this support action on behalf of Elizabeth N. Mencer, born on February 18, 2003. Genetic testing was performed, and it established Father's paternity. Mother lives in North East, Pennsylvania, while Father lives in Ripley, New York. At that time, Father, who suffered a brain injury prior to Elizabeth's conception, was on public assistance in New York and had applied for social security disability. Mother had no knowledge of any other sources of income for Father. Therefore, on July 11, 2005, the parties reached an agreement that Father's support obligation would remain at zero unless he became eligible for social security disability, in which case a support order would be entered and made retroactive to April 3, 2003.

¶ 3 A review conference was held on May 19, 2006. Both parties were present and represented by counsel. Father remained on public assistance, and his claim for social security disability benefits was still unresolved. Mother established at that conference that Father was the beneficiary of a trust that had been created for him in New York. Father claimed that any amounts he received from the trust should not be considered income for purposes of child support. On May 31, 2006, the hearing officer entered another non-monetary award that could be modified retroactively if Father's claim for social security disability benefits was eventually approved.

¶ 4 Mother appealed the recommendation of the hearing officer and requested a hearing before the trial court based upon her position that the income and principal of the trust should be included in Father's income available for Elizabeth's support. A hearing was held on August 16, 2006, where Father presented the telephone testimony of a New York attorney regarding the nature of the trust. The trust was a supplemental needs trust created pursuant to New York state law from the proceeds of a personal injury action. This type of trust allows a disabled person to keep trust distributions without disqualifying the beneficiary from receiving governmental benefits. The trustee is not permitted to make distributions that do not benefit the beneficiary directly but will pay for housing and other items that enhance the beneficiary's life.

¶ 5 Father was in an accident in 2001, and in July 2003, with court approval as well as the approval of the local agency responsible for Father's public assistance benefits, the proceeds of a personal injury action instituted on his behalf were placed in a special needs trust. Father's attorneys were not aware of the present child support action but were aware that Father had child support arrearages that had accrued prior to 2001 for another child. Those arrearages were paid from the proceeds, and the mother of that child received child support payments of $208 per month from the trust for one year, until that child became eighteen. From the remaining settlement proceeds, an annuity was purchased that provides monthly income to the special needs trust in the amount of $678.82. As of the date of the hearing, the trust had a principal balance of approximately $55,000.

¶ 6 The following evidence also was produced at the hearing. Father receives public assistance from the state of New York of approximately $350 per month. He had been denied social security disability benefits but had appealed that decision. During the prior school year, Father worked as a crossing guard for twenty-five dollars a day. He decided to cease that employment because it reduced the amount of public assistance that he received. From July 2004 to July 2005, the special needs trust distributed $19,145.80 to Father, and from July 2005 to July 2006, it distributed $16,729.12 to him. Among other items, the special needs trust has paid for Father's cellular telephone and cable television service. Mother testified that she earns $8.00 per hour and qualifies for subsidized day care of $30 per week for Elizabeth. Due to her meager earnings, she experiences difficulty feeding and clothing her child. N.T. Hearing, 8/16/06, at 47.

¶ 7 The court entered an order on September 1, 2006, adopting the order entered by the hearing officer on May 31, 2006. Simultaneously with the filing of this timely appeal, Mother filed a motion to supplement the record. She alleged therein that Father had received notice that his social security benefits had been denied so that the trial court's failure to include Father's trust funds as income will have a material adverse impact on their minor daughter. This timely appeal followed.

¶ 8 These issues are presented for our review:

I. The Trial Court erred in failing to assess income to Father for purposes of child support in the amount actually utilized by Father, where it is uncontested that Father regularly utilizes income from his supplemental needs trust to pay for his general living expenses and luxuries and where the terms of the trust, and past practice allow the trust to be

invaded for purposes of child support.

II. The Trial Court erred in failing to assess income to Father for purposes of child support in the amount of the princip[al] of Father's supplemental needs trust, where Father regularly uses the trust to pay for his living expenses and where the terms of the trust, and past practice allow the trust to be invaded for purposes of child support.

III. The Trial Court erred in failing to assess an earning capacity to Father where it is uncontested that Father has worked as a crossing guard and could continue in that employment, but may choose not to do so for his own economic benefit.

Mother's brief at i.

¶ 9 We begin by repeating our settled standard of review:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

*D.H. v. R.H.*, 900 A.2d 922, 927 (Pa.Super.2006) (quoting *Samii v. Samii*, 847 A.2d 691, 694 (Pa.Super.2004)).

¶ 10 In the present case, we conclude that the trial court misapplied the law by failing to consider as income the distributions made by the trust for Father's benefit and by neglecting to calculate Father's child support obligation based upon his earning capacity. At the onset, we feel compelled to reiterate some important principles applicable herein. Each parent has an absolute obligation to support a child, and that obligation "must be discharged by the parents even if it causes them some hardship." *D.H. v. R.H.*, *supra* at 931 (quoting *Yerkes v. Yerkes*, 573 Pa. 294, 297–298, 824 A.2d 1169, 1171 (2003)). "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." *Id.* at 931 (citing *Oeler by Gross v. Oeler*, 527 Pa. 532, 594 A.2d 649 (1991)).

¶ 11 The starting point for calculation of a parent's child support obligation is a determination of each party's income available for support. *Id.* "The assessment of the full measure of a parent's income for the purposes of child support requires 'courts to determine ability to pay from all financial resources.'" *Id.* at 930 (quoting *Darby v. Darby*, 455 Pa.Super. 63, 686 A.2d 1346, 1348 (1996)). Thus, "[w]hen determining income available for child support, the court must consider all forms of income." *Arbet v. Arbet*, 863 A.2d 34, 40 (Pa.Super.2004) (quoting *MacKinley v. Messerschmidt*, 814 A.2d 680, 681 (Pa.Super.2002)). The term "income" is defined specifically as:

"**Income.**" Includes compensation for services, including, but not limited to, wages, salaries, bonuses, fees, compensation in kind, commissions and similar items; income derived from business;

gains derived from dealings in property; interest; rents; royalties; dividends; annuities; income from life insurance and endowment contracts; all forms of retirement; pensions; income from discharge of indebtedness; distributive share of partnership gross income; income in respect of a decedent; income from an interest in an estate or trust; military retirement benefits; railroad employment retirement benefits; social security benefits; temporary and permanent disability benefits; workers' compensation; unemployment compensation; other entitlements to money or lump sum awards, without regard to source, including lottery winnings; income tax refunds; insurance compensation or settlements; awards or verdicts; and any form of payment due to and collectible by an individual regardless of source.

23 Pa.C.S. § 4302.

¶ 12 Father's position, which was accepted by the trial court, is relatively straightforward. Any payments made from the trust for his benefit are not income for child support purposes because he has no ability to control the payments. We reject this position because the above definition of income is simply not dependent upon whether the recipient has the ability to control receipt of that income. In fact, other forms of income, such as employer provided perquisites, are considered income, yet the recipient has no control over his receipt of the sums paid on his behalf. *See Arbet, supra* (trial court correctly included dollar amount of father's perquisites from employer as part of his gross monthly income).

¶ 13 Section 4302 expressly provides that income from an interest in an estate or trust is income for child support purposes. By definition, the beneficiary of a trust or estate has no control over that income because the beneficiary's entitlement to distributions from the trust or estate is entirely dependent upon the terms of the trust instrument or will. The fact that the instant trust was created under state law rather than a private trust instrument is irrelevant. Simply put, the fact that Father has no ability to control his receipt of funds is not pertinent to whether the payments made for his benefit are income. There is no limiting phrasing in the statutory language that requires a person to have control over his or her receipt of money in order for it to be included in the definition of income. The definition is expansive rather than restrictive and as noted, includes all financial resources. The distributions that Father receives are income from an interest in a trust, clearly falling within the legal definition of income under Pennsylvania law. The payments are a financial resource available to Father and were improperly excluded from the calculation of his child support obligation.

¶ 14 Father also avers that the distributions cannot be used in calculating his child support obligation because the trustee is not permitted to pay child support from the trust under applicable New York law, which allows distributions from a special needs trust only for the benefit of the beneficiary. Although this argument appears disingenuous in light of the fact that this trust has made child support payments in the past, we observe that in this decision, we are not placing any child support obligation upon the trust; rather, we are holding that the actual distributions from the trust to Father are income for purposes of calculating Father's child support obligation pursuant to Pennsylvania law. Father, rather than the trustee, is obligated to pay the child support. We must leave for a different day the question of whether the trust principal can be at-

tached for purposes of any arrearages that may accrue as the result of our decision herein.

¶ 15 In light of our ruling on Mother's first issue, Mother's second contention essentially has become moot. Specifically, Mother maintains that the trial court erred in failing to consider as income the settlement funds received by Father from the personal injury action. She observes that she instituted this support action on April 2, 2003, that Father received the settlement proceeds of the personal injury action three months later, and that those proceeds amounted to $241,547. She offers that the $241,547 should be averaged for the period from April 2, 2003, to February 18, 2021, when the child will become eighteen years old. This calculation results in imputing yearly income to Father of approximately $13,419.

¶ 16 Mother's premise that the proceeds of the personal injury action should be considered income available for support, as well as her proposed calculation of its inclusion, is in accord with prevailing law. 23 Pa.C.S. § 4302 (income includes "entitlements to money or lump sum awards, without regard to source ... insurance compensation or settlements; awards or verdicts"); *Darby v. Darby,* 455 Pa.Super. 63, 686 A.2d 1346 (1996) (trial court properly annualized tort settlement amount over period of parent's support obligation and included it as income available for support); *Butler v. Butler,* 339 Pa.Super. 312, 488 A.2d 1141 (1985) (annuity income from a tort award was income available for purposes of child support).

¶ 17 We observe, however, that the same money cannot be included twice in Father's child support obligation; the actual trust distributions on Father's behalf are more than the result of the calculation achieved by annualizing the settlement over the life of Father's support obligation.

By including the trust distributions to Father in his child support obligation, we essentially achieved the result requested by Mother. However, the option that is most appropriate for achieving the overriding goal of providing appropriate support for Elizabeth should be utilized.

¶ 18 We now address Mother's position that Father's income as a crossing guard should be imputed to him for purposes of assessing his child support obligation. It is beyond question that in Pennsylvania, a person's income must include his earning capacity, and a voluntary reduction in earned income will not be countenanced; instead, child support will continue to be calculated based upon earning capacity rather than actual earnings. *See D.H. v. R.H., supra.* As we observed in *Woskob v. Woskob,* 843 A.2d 1247, 1251 (Pa.Super.2004) (citations omitted):

> a person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.

¶ 19 The trial court herein concluded that Father was disabled and disregarded Father's admission that he actually was working as a crossing guard but voluntarily terminated that employment because he experienced a commensurate reduction in welfare benefits. This admission categorically establishes his capacity to work as a crossing guard and earn some modicum of money to support the child whom he has fathered.

¶ 20 We also reject Father's position that he should be given an opportunity to address whether his disability affects his ability to work as a crossing guard. At the hearing, Father stated that he made the voluntary decision not to work because it reduced his public assistance benefits, which are not included as income for child support purposes. Indeed, it may be appropriate to reassess Father's earning capacity in light of the recent denial of his disability benefits by the Social Security Administration.

¶ 21 We feel compelled to make a closing observation. While we sympathize that Father may have a limited capacity to earn money, he acknowledged an ability to work at least a few hours a day as a crossing guard. Instead, he chose to do nothing, while enjoying the benefits of cable television and a cellular telephone, yet Mother struggles to feed and clothe their child. This is a child he fathered after he suffered his head injury, which evidences an ability to perform at least some physical functions.

¶ 22 Order reversed. Case remanded for proceedings consistent with this adjudication. Jurisdiction relinquished.

¶ 23 Judge ORIE MELVIN Concurs in the Result.