J-S24001-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.T.-E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| A.T. | : | |
| | : | |
| Appellant | : | No. 1532 MDA 2017 |

Appeal from the Order Entered September 20, 2017
In the Court of Common Pleas of Dauphin County Domestic Relations at
No(s):  0630 DR 09

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                    **FILED JULY 16, 2018**

Appellant, A.T. (hereinafter "Father"), appeals from the trial court's child support order, which was entered on September 20, 2017.  We affirm.

The trial court ably summarized the underlying facts and procedural posture of this case.  As the trial court explained:

> [S.T.-E. (hereinafter "Mother") and Father] were married in December 1997 and separated in April 2009.  They are the parents of three children, born in October 1998, July 2003[,] and October 2006.  Mother and Father divorced in November 2009 and the parties later reached an agreement in 2010 that they would share legal custody and that Mother would have primary physical custody and Father partial physical custody on alternating weekends. . . .

> The parties' separation involved a great deal of conflict that included protection from abuse proceedings.  At some point following entry of their custody agreement, Father stopped exercising custody and has not seen the children for numerous years. . . .

Mother filed a complaint seeking child support and spousal support/alimony *pendente lite* in April 2009 and a support order was entered. After the parties' divorce, it was changed to child support only and the amounts due [were] amended a number of times over the ensuing years.

On August 24, 2016, Mother filed a petition seeking an increase to the [then-existing] child support order[, which required] Father [to] pay $1,492[.00] per month. Following a Domestic Relations Section (DRS) office conference, [the trial] court issued an order recommended by the conference officer dated December 14, 2016 (effective August 24, 2016), directing that Father pay $1,603[.00] monthly child support plus $150[.00] towards arrears. In calculating support, the conference officer assigned Mother a monthly net income of $1,226[.00] based upon an earning capacity of $8[.00] per hour for a [40-hour] work week. Mother was not working at the time and had not worked during the parties' marriage. Father was assigned a monthly net income of $6,254[.00,] reflecting his actual wages. A provision in the recommended order reflected the parties' stipulation that they pay costs of agreed upon extracurricular activities in proportion to their incomes.

Mother sought *de novo* review and a hearing was held before [the trial court] on March 8, 2017. At that hearing, Mother argued that Father should also pay his proportionate share for the children's private and religious school tuition. She also argued he should pay his share of the middle child's annual summer camp costs and her overseas school-related trip scheduled for April 2017. Mother requested as well that Father be required to pay increased support due to his failure to exercise any custody for several years.

Mother testified that all children take the overseas trip following 8th grade as part of their religious training. Mother paid $2,293.21 for the trip on February 1, 2017 and provided an invoice to the court reflecting the cost, which was reduced due to her fundraising and a scholarship. Upon the recommendation of the middle child's teacher, that child had attended summer camp for a number of years to help with her socialization and intends to do so in the future. The camp costs $500[.00] annually and Mother provided an invoice for the 2016 summer camp.

- 2 -

Regarding custody, Mother testified that Father has refused to see their children, noting he last saw the oldest child in 2010 and the younger two in 2014. She presented a signed letter he sent to her in August 2014, the contents of which were recited at the hearing, as follows:

> I [(Father)], no longer want any contact from [Mother], either direct or indirect, by phone, text, or e-mail. Any further contact from this point will be considered harassment by Communications Pa.C.S. 18 Section 2709 and could be punishable up to 90 days in jail. The police will be notified and I will prosecute any violations to the full extent of the law.

Father testified . . . that Mother has prevented him from having contact with the children and that when there was contact in the past, she would interfere by making excessive phone calls. According to Father, the oldest child has told him she will never see him again. Father presented a letter from May 2013, from his then-attorney to Mother's attorney, stating that Father has been attempting to resume physical custody but that Mother was refusing to allow him to do so. Father admitted, however, that he never sought to modify the existing custody order nor filed a contempt action against [Mother] seeking to enforce his custodial rights. At the conclusion of the hearing, [the trial court] took the matter under advisement.

[On March 17, 2017, w]hile [the trial court's] decision was pending, Father filed a petition to modify [the child custody order] . . . on the ground that his income had decreased due to the loss of his job. [The trial court] issued an order [on] May 24, 2017[, which covered] two time periods. The first part of the order directed that, effective August 24, 2016 (the date Mother filed her petition for modification), Father pay $1,868[.00] per month in child support[,] plus $100[.00] on arrears. In calculating the support amount, [the trial court] directed that Father's basic child support obligation include a 15% upward deviation due to [Father's] fail[ure] to exercise his parental custodial responsibilities. The second time period commenced March 17, 2017 (the date Father filed his petition for modification) under which Father's child support obligation was reduced to $1,083[.00] per month, plus

- 3 -

$100[.00] on arrears. This calculation factored in that Father was receiving unemployment compensation. The order also included a 15% upward deviation due to his failure to exercise custody and his proportional share for the $500[.00] annual camp costs for the middle child. The order again included a provision directing the parties share the cost of agreed upon extracurricular activities in proportion to their incomes (excluding the $500[.00] camp costs already factored into the support order). [The trial court] also ordered that $1,146.61 be added to Father's arrears, which represented one-half of the cost of the overseas school-related trip taken by the middle child, which had been paid solely by Mother. The support order issued did not require Father to pay any portion of the two younger children's religious school tuition. Notably, Father did not file an appeal from the May 24, 2017 order[, which included the trial court's] decision to include a 15% upward deviation or that he pay a portion of the middle child's overseas trip and annual camp costs.

On May 25, 2017, Father filed a petition for modification seeking that the oldest child, then 18 years old, be removed from the order due to her anticipated emancipation the following month, when she would graduate from high school. Following a DRS office conference, [the trial court] issued an order August 11, 2017, as recommended by the conference officer, which covered three time periods. The first, effective June 9, 2017, reduced Father's support obligation to $946[.00] per month to reflect the removal of the oldest child from the order. Effective July 8, 2017, the order increased to $1,157[.00] per month due to Father having obtained a job and an increased monthly net income. Effective August 1, 2017, the order was decreased slightly to $1,093[.00] to account for Father's payment of health care premiums for the children. Father's support obligation under all three time periods again included a 15% upward deviation to reflect his failure to exercise custody. The order also included a provision that the parties share the cost of agreed upon extracurricular activities in proportion to incomes (less $500[.00] for camps already considered).

Father filed a timely request for *de novo* review and a hearing was held before [the trial court on] September 20, 2017. At the hearing, Father argued that he should not be directed to

pay a 15% upward deviation due to his failure to exercise custody because Mother has not allowed him to see the children and that he did not even know where they lived. Father provided the court with unmarked correspondence including a letter from his then-attorney to Mother's attorney (dated March 17, 2017), in which he indicated a desire to resume his alternating weekend periods of custody as soon as possible. Mother's attorney responded to Father's March 17, 2017 letter, stating Mother would not allow Father to see the children because his prior actions caused the children significant psychological problems, that he has "willfully, intentionally, and deliberately been the direct root of the disassociation between himself and the children," and it would not be in their best interests to see him. Mother noted the history of abuse against her and the minor children and that she is reasonably in fear of her life from him.

Near the conclusion of the hearing[,] Mother's attorney inquired as to whether Father could add his emancipated eldest daughter (then still 18 years of age) to his [employer-provided] family health insurance. As explained to the court, the eldest child suffers from serious mental health issues and had been receiving treatment with providers permitted under her prior insurance with Father. After that lapsed, she was able to obtain medical assistance but it did not cover her mental health providers and caused a loss of continuity with her treatment. Under Father's plan, she would be able to treat again with her mental health providers.

Father agreed that it would cost him nothing extra to add her to his health insurance policy but believed that he was unable to have his employer add her. [The trial court] informed [Father] that [he could, in fact, add his daughter to his policy,] since children are mandated by law as being eligible for health benefits until they are 26 years old. [Father did not raise a further objection and the trial court] assumed Father was amenable to this common sense solution to providing his eldest daughter with adequate health insurance, at no additional cost to him, and directed DRS to add her to his policy to which Father did not articulate any objection. Following the hearing, [the trial court] issued an order denying Father's claims on *de novo* review and directing he add the eldest child to his health insurance. Father thereafter filed an appeal to the Superior Court.

Trial Court Opinion, 12/6/17, at 1-5 (internal citations, corrections, emphasis and footnotes omitted) (some internal quotations omitted).

Father raises one claim on appeal:

Was it an abuse of discretion for the trial court to enter an order that had the effect of requiring [Father] to provide health insurance (regardless of cost) to a daughter who all parties agree is emancipated and that required [Father] to incur a 15% upward deviation in support and provide part of the cost for certain purported extra-curricular activities for the children when all parties agree that, directly because of [] Mother's actions, [Father] has not seen his children for almost seven years, does not know where they live and most certainly had no input into the decisions that led to costs for the extra-curricular activities[?]

Appellant's Brief at 3.

We have explained:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

**Silver v. Pinskey**, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*), *quoting*

**Mencer v. Ruch**, 928 A.2d 294, 297 (Pa. Super. 2007).

We have reviewed the briefs of the parties, the relevant law, the certified record, and the opinion of the able trial court judge, the Honorable Jeannine

Turgeon. We conclude that there has been no error in this case and that Judge Turgeon's opinion, entered on December 6, 2017, meticulously and accurately disposes of Father's issues on appeal. Therefore, we affirm on the basis of Judge Turgeon's thorough opinion and adopt it as our own.[1] In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Turgeon's opinion.

Order affirmed. Mother's Motion to Strike Appellant's Reproduced Record denied. Mother's Motion to Suppress or Strike Appellant's Reply Brief or, in the Alternative, to Strike Non-Compliant Portions denied. Jurisdiction relinquished.

Judge Musmanno joins this Memorandum.

Judge Kunselman joins and also files a Concurring Statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/16/2018

---

[1] With respect to the issue of whether the trial court erred in requiring the oldest child to be included on Father's health insurance policy, we note that Father waived this issue by failing to object at the hearing when the trial court indicated that the oldest child was to be added on the policy. **See** N.T. Hearing, 9/20/17, at 16-18; **see also Mazlo v. Kaufman**, 793 A.2d 968, 969 (Pa. Super. 2002) ("In order to preserve an issue for review, litigants must make timely and specific objections during trial. Claims which have not been raised in the trial court may not be raised for the first time on appeal") (internal citations omitted).

Copies Distributed 12-7-17

S. T.E.,
     Plaintiff

          v.

A.T.,
     Defendant

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
: NO. 0630 DR 2009; PACSES 763110775
:
: CIVIL ACTION – Custody

## OPINION

Before the court is the appeal filed by Father from an order directing he pay child support. Father challenges this court's imposition upon him of an upward deviation of support because he has failed to exercise custody. He also challenges the court's decision to require he pay a portion of camp and trip expenses incurred by Mother on behalf of one of the parties' children. Finally, he objects to the court's direction that he include his eldest child on his health insurance policy, even though the inclusion would cost him nothing. This opinion is written in support of the child support order, pursuant to Pa.R.A.P. 1925(a).

## Background

The parties, Mother S.T.E. and Father A.T., were married in December 1997 and separated in April 2009. They are the parents of three children, born in October 1998, July 2003 and October 2006. Mother and Father divorced in November 2009 and the parties later reached an agreement in 2010 that they would share legal custody and that Mother would have primary physical custody and Father partial physical custody on alternating weekends.[1] The parties' separation involved a great deal of conflict that included Protection From Abuse proceedings.[2] At some point following entry of their custody agreement, Father stopped exercising custody and has not seen the children for numerous years. Mother filed a complaint seeking child support and spousal support / *alimony pendente lite* in April 2009 and a support order was entered. After the parties' divorce, it was changed to child support only and the amounts due amended a number of times over the ensuing years.

---

[1] A.T. v. S.T.E., 2009 CV 5034 CU (Dauphin County).
[2] S.T.E. v. A.T., 2009 CV 4006 AB (Dauphin County).

On August 24, 2016, Mother filed a petition seeking an increase to the then existing child support order requiring Father pay $1,492 per month. Following a Domestic Relations Section (DRS) office conference, this court issued an order recommended by the conference officer dated December 14, 2016 (effective August 24, 2016), directing that Father pay $1,603 monthly child support plus $150 towards arrears. In calculating support, the conference officer assigned Mother a monthly net income of $1,226 based upon an earning capacity of $8 per hour for a forty-hour work week. Mother was not working at the time and had not worked during the parties' marriage. Father was assigned a monthly net income of $6,254 reflecting his actual wages. (N.T. 3/8/17 at 4-6) A provision in the recommended order reflected the parties' stipulation that they pay costs of agreed upon extracurricular activities in proportion to their incomes. (N.T. 3/8/17 at 6)

Mother sought de novo review and a hearing was held before me on March 8, 2017. At that hearing, Mother argued that Father should also pay his proportionate share for the children's private and religious school tuition. She also argued he should pay his share of the middle child's annual summer camp costs and her overseas school-related trip scheduled for April 2017. Mother requested as well that Father be required to pay increased support due to his failure to exercise any custody for several years. (N.T. 3/8/17 at 6, 11)

Mother testified that all children take the overseas trip following 8th grade as part of their religious training. Mother paid $2,293.21 for the trip on February 1, 2017 and provided an invoice to the court reflecting the cost, which was reduced due to her fundraising and a scholarship. (N.T. 3/8/17 at 8-9) [3] Upon the recommendation of the middle child's teacher, that child had attended summer camp for a number of years to help with her socialization and intends to do so in the future. The camp costs $500 annually and Mother provided an invoice for the 2016 summer camp. (N.T. 3/8/17 at 10, 13)

Regarding custody, Mother testified that Father has refused to see their children, noting he last saw the oldest child in 2010 and the younger two in 2014. (N.T. 3/8/17 at 12, 13) She presented

---

[3] During both the March 8, 2017 and September 20, 2017 de novo hearings, the parties presented numerous exhibits, all of which I reviewed and were copied for my files and those of the Dauphin County DRS. However, none of the exhibits were formally admitted into evidence by the parties, nor attached to the hearing transcripts.

a signed letter he sent to her in August 2014, the contents of which were recited at the hearing, as follows:

> I [A.T.], no longer want any contact from [S.T.E.], either direct or indirect, by phone, text, or e-mail. Any further contact from this point will be considered harassment by Communications Pa. C.S. 18 Section 2709 and could be punishable up to 90 days in jail. The police will be notified and I will prosecute any violations to the full extent of the law.

(N.T. 3/8/17 at 12, 32-33) Father testified (via his attorney's offer of proof, adopted by Father) that Mother has prevented him from having contact with the children and that when there was contact in the past, she would interfere by making excessive phone calls. (N.T. 3/8/17 at 17) According to Father, the oldest child has told him she will never see him again. (Id.) Father presented a letter from May 2013, from his then-attorney to Mother's attorney, stating that Father has been attempting to resume physical custody but that Mother was refusing to allow him to do so. (N.T. 3/8/17 at 17-18) Father admitted, however, that he never sought to modify the existing custody order nor filed a contempt action against mother seeking to enforce his custodial rights. (N.T. 3/8/17 at 26-27) At the conclusion of the hearing, I took the matter under advisement.

While my decision was pending, Father filed a petition to modify March 17, 2017, on the ground that his income had decreased due to the loss of his job. I thereafter issued an order May 24, 2017 covering two time periods. The first part of the order directed that, effective August 24, 2016 (the date Mother filed her petition for modification), Father pay $1,868 per month in child support plus $100 per month on arrears. In calculating the support amount, I directed that Father's basic child support obligation include a 15% upward deviation due to him "failing to exercise his parental [custodial] responsibilities." The second time period commenced March 17, 2017 (the date Father filed his petition for modification) under which Father's child support obligation was reduced to $1,083 per month, plus $100 on arrears. This calculation factored in that Father was receiving unemployment compensation. The order also included a 15% upward deviation due to his failure to exercise custody and his proportional share for the $500 annual camp costs for the middle child.[4] The order again included a provision directing the parties share the cost of agreed

---

[4] Under the May 24, 2007 order, effective August 24, 2016, Mother was assigned a monthly net income based upon her earning capacity of $1,226 and Father's was based upon his wage income of $6,254. Father's proportionate share of the basic child support owed under those incomes was $1,633 per month. The figure was increased to include a 15% upward deviation of $245 for failure to exercise custody. Father was also

upon extracurricular activities in proportion to their incomes (excluding the $500 camp cost already factored into the support order). I also ordered that $1,146.61 be added to Father's arrears, which represented one-half of the cost of the overseas school-related trip taken by the middle child, which had been paid solely by Mother. The support order issued did not require Father to pay any portion of the two younger children's religious school tuition. Notably, Father did not file an appeal from the May 24, 2017 order including from my decision to include a 15% upward deviation or that he pay a portion of the middle child's overseas trip and annual camp costs.

On May 25, 2017, Father filed a petition for modification seeking that the oldest child, then 18 years old, be removed from the order due to her anticipated emancipation the following month, when she would graduate from high school. Following a DRS office conference, I issued an order August 11, 2017, as recommended by the conference officer, which covered three time periods. The first, effective June 9, 2017, reduced Father's support obligation to $946 per month to reflect the removal of the oldest child from the order. Effective July 8, 2017, the order increased to $1,157 per month due to Father having obtained a job and an increased monthly net income. Effective August 1, 2017, the order was decreased slightly to $1,093 to account for Father's payment of health care premiums for the children. Father's support obligation under all three time periods again included a 15% upward deviation to reflect his failure to exercise custody.[5] The order also included a provision that the parties share the cost of agreed upon extracurricular activities in proportion to incomes (less $500 for camps already considered). (See N.T. 9/20 at 3-5)

---

[5] Under the recommended order effective June 9, 2017, Mother was again assigned a $1,226 monthly net income (earning capacity) while Father was again assigned a monthly net income of $2,437 from unemployment compensation. The basic child support obligation for two children under the Support Guidelines was $1,200, of which Father's proportionate share was $798, to which the officer added a 15% upward deviation of $120 per month and $28 per month for his proportional share of camp costs paid by Mother, for a total order of $946 ($798 + $120 + $28).

Under the recommended order effective July 8, 2017, Mother was assigned her $1,226 monthly net income while Father was assigned his new employment monthly net income of $3,249. The basic child support obligation for two children under the Support Guidelines was $1,349, of which Father's proportionate share was $979, to which the officer added a 15% upward deviation of $146 per month and $30 per month for his proportional share of camp costs, for a total order of $1,157 ($979 + $147 + $30).

Under the recommended order effective August 1, 2017, Father's total support obligation of $1,157 (calculated above as of July 8, 2017), was reduced by $63 per month, to account for Mother's proportionate share of health insurance premiums Father had commenced paying to include the children on his employer-provided health insurance.

4

Father filed a timely request for de novo review and a hearing was held before me September 20, 2017. At the hearing, Father argued that he should not be directed to pay a 15% upward deviation due to his failure to exercise custody because Mother has not allowed him to see the children and that he did not even know where they lived. Father provided the court with unmarked correspondence including a letter from his then-attorney to Mother's attorney (dated March 17, 2017), in which he indicated a desire to resume his alternating weekend periods of custody as soon as possible.[6] (See N.T. 9/20/17 at 5) Mother's attorney responded to Father's March 17, 2017 letter, stating Mother would not allow Father to see the children because his prior actions caused the children significant psychological problems, that he has "willfully, intentionally and deliberately been the direct root of the disassociation between himself and the children," and it would not be in their best interests to see him. Mother noted the history of abuse against her and the minor children and that she is reasonably in fear of her life from him. (N.T. 9/20/17 at 7, 8)

Near the conclusion of the hearing Mother's attorney inquired as to whether Father could add his emancipated eldest daughter (then still 18 years of age) to his employer provided family health insurance. As explained to the court, the eldest child suffers from serious mental health issues and had been receiving treatment with providers permitted under her prior insurance with Father. After that lapsed, she was able to obtain medical assistance but it did not cover her mental health providers and caused a loss of continuity with her treatment. (N.T. 9/20/17 at 9) Under Father's plan, she would be able to treat again with her mental health providers.

Father agreed that it would cost him nothing extra to add her to his health insurance policy but believed that he was unable to have his employer add her. I informed him that was not true since children are mandated by law as being eligible for health benefits until they are 26 years old. (N.T. 9/20/17 at 16-17). I assumed Father was amenable to this common sense solution to providing his eldest daughter with adequate health insurance, **at no additional cost to him**, and directed DRS add her to his policy to which Father did not articulate any objection. (N.T. 9/20/17 at 17) Following the hearing, I issued an order denying Father's claims on de novo review and directing he add the eldest child to his health insurance. Father thereafter filed an appeal to the Superior Court.

---

[6] This letter was dated shortly after the first de novo hearing in this matter, March 8, 2017, in which Mother sought the upward deviation due to Father's non-exercise of his custodial rights.

<u>Legal Discussion</u>

In his statement of errors raised on appeal, Father argues that this court erred by (1) imposing upon him a 15% upward deviation in child support due to his failure to exercise custody where Mother has secreted the whereabouts of the children from him for years and because he has lacked the financial resources to pursue a remedy; (2) continuing to require he pay his a portion of the middle child's overseas school trip as he was not consulted by Mother concerning the appropriateness and affordability of the trip; (3) requiring he pay his proportionate share of the $500 annual summer camp cost when he was not consulted by Mother about this cost and also because Mother failed to provide any documentation evidencing this expenditure; and (4) requiring that he include the oldest child on his health insurance since she is emancipated and he has no legal obligation to provide her with such insurance.

*Upward Deviation Due to Failure to Exercise Custody*

Father argues the court erred by requiring he pay 15% extra to account for the fact he exercises no custody. He claims that no deviation was warranted because Mother secreted the whereabouts of the children from him for years and because he has lacked the financial resources to pursue a remedy by seeking relief in the custody action.

The amount of basic child support due under the Support Guidelines assumes that children spend 30% of their time with the obligor and that the obligor makes direct expenditures on their behalf during that time. See Pa.R.C.P. 1910.16-1 (Explanatory Comment 2010, E. Shared Custody) An Explanatory Comment to Support Guidelines Rule 1910.16-4, grants this court discretion to make an upward deviation to basic child support in cases where the obligor parent spends considerably less than the assumed 30% custodial time factored into basic child support figures, as follows:

> The basic support schedule incorporates an assumption that the children spend 30% of the time with the obligor and that the obligor makes direct expenditures on their behalf during that time. Variable expenditures, such as food and entertainment that fluctuate based upon parenting time, were adjusted in the schedule to build in the assumption of 30% parenting time. **Upward deviation should be considered in cases in which the obligor has little or no contact with the children.** However, upward deviation may not be appropriate where an obligor has infrequent overnight contact with the child, but provides meals and entertainment during daytime contact. Fluctuating expenditures should be considered rather than the extent of overnight time.

6

> Downward deviation may be appropriate when the obligor incurs substantial fluctuating expenditures during parenting time, but has infrequent overnights with the children.
> ...

Pa.R.C.P. No. 1910.16-4 (Explanatory Comment 2010) (emphasis added). See, Morgan v. Morgan, 99 A.3d 554, 560 (Pa. Super. 2014) (noting that this Comment "only suggests that upward deviation be considered; it does not require it.")[7]

Before reaching the merits of Father's argument, I note that I previously included a 15% upward deviation in the May 24, 2017 child support order (issued following the March 8, 2017 de novo hearing), "for Father's failure to exercise his parental responsibilities." Father did not appeal from that order and thus has waived raising the issue, at least to the extent of his claims through the date of that order.

Assuming the issue has not been waived, however, the record shows Father is still failing to exercise custodial responsibilities. The evidence presented was that Father has not seen his two younger children for almost four years (since the early part of 2014). Father asserted that he recently tried to exercise custody but has been "thwarted" by Mother. In support, he presented correspondence between his then-attorney and Mother's attorney from March 2017. Mother's attorney cited a number of reasons for stating in her letter that Mother would not agree to resume custody after such a long period of time, reasons to which Mother credibly testified at the most recent hearing, including a past history of abuse, that Mother fears for her life if she were to resume any contact with Father, and that Father's past actions have caused the children significant

---

[7] The Support Guidelines provide a direct remedy to an obligor parent who has custody a "substantial amount of time," defined as 40% or more of overnights. See Pa.R.C.P. 1910.16-4(c)(1). In such cases, the Rule grants that parent a rebuttable presumption the he or she "is entitled" to a reduction in the basic support obligation to reflect the extra time under a formula set forth in the Rule. Id. The Rules themselves grant no such presumption and formulaic remedy to the obligee parent in the reverse situation where the obligor parent spends considerably less than the assumed 30% custodial time. However, the Explanatory Comment quoted above notes that upward deviation *should* be considered in those cases. Pa.R.C.P. No. 1910.16-4 (Explanatory Comment 2010)

Newly proposed language by the Domestic Relations Procedural Rules Committee would explicitly provide within the text of Rule 1910.16-4 that a court "*shall* consider an upward deviation" of support where the obligor exercises insubstantial custodial time, defined as 10% or less custodial time. Proposed Pa.R.C.P. 1910.16-4(c)(2) (emphasis added) (Recommendation 167; Proposed Amendment of Pa.R.C.P. No. 1910.16-4 (47 Pa.B. 5928, Sept. 23, 2017); http://www.pabulletin.com/secure/data/vol47/47-38/1570.html).

psychological problems. Since that time, Father has done nothing to pursue custody. I specifically advised him at the March 8, 2017 hearing that he should file a modification request or contempt petition if he wanted to see his children. (N.T. 3/8/17 at 27-28) In addition, despite his current attorney's claims at the September 20, 2017 hearing that Father was then in the process of seeking custody by filing a petition for contempt when he got the funds together (N.T. 9/20/17 at 5), the record shows he has made no such filings since that hearing to date. The custody case docket in fact reflects no action in the custody matter since 2010. (See N.T. 9/20/17 at 6) Father's argument on appeal suggesting he has not filed for custody because he lacks sufficient income lacks credibility. Based upon Father's $3,249 monthly net income, he can clearly afford to pay the $150 fee to file a contempt petition. The evidence showed Father has not genuinely attempted to exercise custody and that his testimony to the contrary is not credible.

The basic child support amount due under the Support Guidelines assumes Father is making direct expenditures on the children's behalf when they are in his custody. Because Mother is paying for all such expenditures Father is otherwise presumed to be making during his custodial periods, she was entitled to a 15% upward deviation in the basic support amount, particularly since the record shows a need for such support wherein she has been assigned a minimum wage earning capacity, receives medical assistance and food stamps. (See N.T. 9/20/17 at 3-4)

*Additional Expenses: Cost of Child's Trip and Summer Camp*

The next two issues involve similar claims and I thus address them together. Father argues this court erred by requiring he pay a share of the middle child's overseas school trip and also by requiring he pay a proportionate share of the $500 per year cost of the middle child's summer camp.

The overseas trip expense issue was fully and finally litigated and memorialized in my support order issued May 24, 2017, following the March 8, 2017 de novo hearing. At the hearing, Mother testified about the nature of the trip and its cost, and requested Father reimburse her a portion of the costs. My order directed he pay one-half of the cost, totaling $1,146.61. Father did not appeal from that order and thus the issue was fully concluded and cannot be litigated again.

8

Even if Father properly raised the issue, however, the inclusion of this cost to Father was proper. "Additional expenses" such as the one at issue are a legitimate part of a child support order under Support Guidelines Rule 1910.16-6(d), which states:

> **Rule 1910.16-6. Support Guidelines. Adjustments to the Basic Support Obligation. Allocation of Additional Expenses.**
>
> The trier of fact may allocate between the parties the additional expenses identified in subdivisions (a) - (e). If under the facts of the case an order for basic support is not appropriate, the trier of fact may allocate between the parties the additional expenses.
>
> ...
>
> **(d) Private School Tuition. Summer Camp. Other Needs.** The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share may be added to his or her basic support obligation.

Pa.R.C.P. 1910.16-6.[8] Under this Rule, if this court determines that an additional expense is used to pay for a reasonable need and further finds that the amount of basic child support is not appropriate without inclusion of the additional expense, it can require that the obligor pay his or

_____

[8] Subsection (d) was amended effective October 1, 2017, as follows:

> **(d) Private School Tuition. Summer Camp. Other Needs.** Expenditures for needs outside the scope of typical child-rearing expenses, e.g., private school tuition, summer camps, have not been factored into the Basic Child Support Schedule.
>
> (1) If a party incurs an expense for a need not factored into the Basic Child Support Schedule and the court determines the need and expense are reasonable, the court shall allocate the expense between the parties in proportion to the parties' monthly net incomes. The court may order that the obligor's share is added to his or her basic support obligation, paid directly to the service provider, or paid directly to the obligee.
>
> (2) Documentation of the expenses allocated under (d)(1) shall be provided to the other party not later than March 31 of the year following the calendar year in which the invoice was received unless the service provider invoices the parties separately for their proportionate share of the expense. For purposes of subsequent enforcement, these expenses need not be submitted to the domestic relations section prior to March 31. Allocation of expenses for which documentation is not timely provided to the other party shall be within the discretion of the court.

Pa.R.C.P. 1910.16-6 (as amended). Notably, the amended language has not substantively altered this subsection other than to explicitly require that the court find both the expense and the need reasonable, as opposed to just the need.

9

her share of the expense. Mother presented evidence that the overseas trip was a one-time cost and was a normal part of the child's school curricula. Furthermore, the original cost of the trip, of over $4,000, was reduced in part due to Mother's fundraising and thus, the final cost of $2,293.21 was reasonable. Because this expenditure was for a reasonable need, and its exclusion from the order would be inappropriate, Father was properly required to pay a portion of it.[9]

Father argues that he should not be required to pay any part of the trip's cost because he never agreed to it and Mother never consulted him about it including whether it was appropriate and affordable. As noted above, earlier versions of the support orders entered in this case recite that the parties reached some sort of stipulation that they pay costs of agreed upon extracurricular activities in proportion to their incomes. (N.T. 3/8/17 at 6.) There was no evidence that Mother obtained Father's agreement or consulted with him before paying for the overseas trip. Nevertheless, to the extent there was a stipulation of some sort between the parties, that stipulation cannot be used to bargain away any child support rights, of which an "additional expense," such as the overseas trip here, is a legitimate part. See Huss v. Weaver, 134 A.3d 449, 454–55 (Pa. Super. 2016), *appeal denied*, 158 A.3d 1231 (Pa. 2016) ("[T]he right to child support **belongs to the child**, and thus cannot be "bargained away" by the parents" and parental agreements to the contrary are invalid on public policy grounds) (bolding and italics in original, citation omitted)). Instead, this court is mandated to follow the Support Guidelines which permit the court to impose an additional expense upon the obligor if this court determines that the expense covered a reasonable need and its exclusion would render the support order inappropriate. Pa.R.C.P. 1910.16-6(d).

Father similarly argues that I erred by requiring he pay his proportionate share of the $500 annual camp cost when he was not consulted by Mother about this cost and also because Mother failed to provide any documentation evidencing this expenditure. This issue was initially raised at the March 8, 2017 de novo hearing wherein Mother sought that Father pay a portion of this expenset. In my final order following that hearing, issued May 24, 2017, I directed that the *annual*

---

[9] I directed that Father pay 50% of the total cost of the trip, which was less than his proportionate share of the parties' combined incomes. Since the matter was not appealed by either party, his obligation remains in this lower amount.

10

cost be included in Father's child support order to be paid in proportion to his income. (See footnote 4)

As with the claim above, Father's failure to appeal from my decision imposing he pay a proportionate share of the $500 camp cost on an annual basis is a waiver by him to raising the issue now. To the extent not waived, the cost was clearly a proper inclusion into the child support under Rule 1910.16-6(d). Annual camp attendance is a reasonable need wherein Mother testified the child attended upon the recommendation of her teacher to help with socialization. Mother properly documented the cost in the prior hearing. Because this cost reflected a reasonable need, and its exclusion from the order would be inappropriate, Father was properly required to pay a portion of it. Pa.R.C.P. 1910.16-6(d).

*Health Insurance*

Father's final argument is that this court erred by requiring he include the eldest child on his health insurance since she is emancipated and he has no legal obligation to provide her with such insurance. As I noted above, Father appeared amenable to the addition of his eldest child on his health insurance policy, given that *it would add no additional cost* to his health insurance expense, and I thus included it in the order. Father is correct that I cannot force him to provide insurance to his emancipated daughter. Nevertheless, it evidences a deep level of alienation with this child and most certainly with his other children and supports my finding that his testimony not credible that he genuinely wants to have contact with his children.

Accordingly, I issued the order of September 20, 2017, from which Father appeals.

_____December 6, 2017_____
Date

_____
Jeannine Turgeon, Judge

Distribution:

Anthony McBeth, Esq.
4705 Duke Street
Harrisburg Pa. 17101

Lisa Hopkins, Esq.
1719 North Front Street, Suite 300
Harrisburg Pa. 17102

Kim Robson, DRO Director